Filed 5/20/15; part. pub. & mod. order 6/12/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>JOEL CURLEE,<br><br>        Defendant and Appellant. | A136337<br><br>(Alameda County<br>Super. Ct. No. 165110) |

The Sexually Violent Predators Act (Welf. & Inst. Code,[1] § 6600 et seq. (SVPA or the Act)) provides for involuntary civil commitment of certain offenders who are found to be sexually violent predators (SVP's) after completing their prison terms.  (*People v. McKee* (2010) 47 Cal.4th 1172, 1186–1187 (*McKee I*).)  To establish that a person is an SVP, the People must prove beyond a reasonable doubt that the offender has been convicted of a qualifying sexually violent offense against one or more victims and that the offender has a diagnosed mental disorder that makes it likely the person would engage in sexually violent conduct if released.  (§§ 6600, subd. (a)(1), 6604.)

Defendant Joel Curlee appeals an order committing him as an SVP.  He contends recent amendments to the SVPA render his commitment unconstitutional and the trial court abused its discretion in denying his request for a continuance of his trial.  We do not agree with Curlee on these points.  Curlee also contends he was deprived of his right to equal protection when he was compelled to testify during the People's case-in-chief.  Curlee argues that because a person found not guilty of crimes by reason of insanity

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

1

(NGI) may not be compelled to testify at hearings to extend his or her commitment, neither should a person found to be an SVP be compelled to testify. We shall remand the matter to the trial court to afford the People the opportunity to justify the differential treatment of SVP's and NGI's in this respect.

## I. BACKGROUND

The Alameda County District Attorney filed a petition to commit Curlee as an SVP in December 2010. A supporting declaration averred Curlee had suffered a qualifying conviction, for forcible rape (Pen. Code, § 261), and that the Director of the California Department of Mental Health[2] (the Department) had requested Curlee be civilly committed as an SVP based upon the evaluations of three independent mental health professionals who had determined Curlee had a diagnosed mental disorder that made him likely to engage in sexually violent, predatory criminal behavior unless he received appropriate treatment in custody.

A jury trial took place, in which the People called Curlee as a witness in their case-in-chief. The jury found Curlee was an SVP, and on August 7, 2012, the trial court committed him for an indefinite term to the Department for appropriate treatment and confinement in a state hospital.

## II. DISCUSSION

### A. Equal Protection

Curlee argues he was deprived of his constitutional right to equal protection when the District Attorney called him as a witness.[3]

At the time of Curlee's commitment trial, there was case law holding that an SVP's constitutional right to remain silent was not violated by allowing the district attorney to call him or her as a witness. (*People v. Leonard* (2000) 78 Cal.App.4th 776,

---

[2] The State Department of Mental Health is now known as the State Department of State Hospitals. (*People v. Gonzales* (2013) 56 Cal.4th 353, 360.)

[3] After briefing in this matter was complete, Curlee requested, and we granted, leave to file supplemental briefs on this point.

2

789–793 (*Leonard*).)  In reaching this conclusion, the court in *Leonard* reasoned that SVP proceedings were civil, not criminal, in nature for purposes of the Fifth Amendment privilege against compulsory self-incrimination.  (*Id*. at pp. 791–792.)

Curlee does not contend that *Leonard* was incorrectly decided.  Rather, he makes the following argument:  Our Supreme Court recently held that a person found not guilty by reason of insanity (NGI) has a statutory right not to testify in a civil proceeding to extend his commitment.  (*Hudec v. Superior Court* (2015) 60 Cal.4th 815, 818 (*Hudec*).)  This right is found in the statutory provision that such a person " 'shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings.' " (*Id*. at pp. 818, 832; Pen. Code, § 1026.5, subd. (b)(7).)  This holding does not apply directly to Curlee, because he is not an NGI.  However, in *McKee I*, *supra*, 47 Cal.4th at p. 1207, in the context of considering whether an indeterminate SVP term was unconstitutional, our Supreme Court concluded that NGI's and SVP's were similarly situated for equal protection purposes.  Curlee argues the same reasoning applies here, i.e., that a regime under which NGI's may refuse to testify at their commitment hearings but SVP's may not would likewise raise equal protection problems.

### 1.  *Forfeiture*

We must first consider whether Curlee forfeited this claim by failing to raise it below.  Before trial, the District Attorney filed a brief seeking the court's permission to call Curlee as a witness during its case-in-chief, citing *Leonard*.  (*Leonard*, *supra*, 78 Cal.App.4th 776.)  The trial court stated at the hearing, "I'm aware that that's allowable," and asked defense counsel if he wished to be heard.  Defense counsel replied, "No.  I believe that is the law."  When the prosecutor called Curlee as a witness, his counsel stated, "No objection."

The Attorney General argues Curlee thereby forfeited his equal protection claim. (*People v. Carpenter* (1997) 15 Cal.4th 312, 362 [defendant may not raise claim that denial of severance denied equal protection for first time on appeal].)  Although Curlee did not raise his objection below, we shall exercise our discretion to consider this issue. When the trial court allowed the District Attorney to call Curlee as a witness, the

3

published authority on the question of whether a person could be called to testify against himself in an SVP commitment hearing answered that question in the affirmative. (*Leonard*, *supra*, 78 Cal.App.4th at pp. 789–793.)  As we have explained, however, Curlee's argument now is a two-step one:  (1) that an NGI is statutorily exempt from being called as a witness against himself in a commitment proceeding (as our high court held in *Hudec*, *supra*, 60 Cal.4th 815), and (2) that although the SVP statute does not provide such an exemption, SVP's are similarly situated to NGI's for purposes of the commitment statutes, and it is therefore a denial of equal protection to require an SVP to testify against himself.

At the time the trial court made its ruling, there was a split of authority as to the first step of this argument, that is, whether an NGI was statutorily exempt from being so called.  In 2004, the Fifth Appellate District concluded in *People v. Haynie* that pursuant to the language of the NGI statute, the privilege against self-incrimination barred the prosecution from questioning the defendant about his mental state at a commitment extension hearing.  (*People v. Haynie* (2004) 116 Cal.App.4th 1224, 1225–1226, citing Pen. Code, § 1026.5, subd. (b)(7).)  Two years later, Division Two of the Fourth Appellate District reached the opposite conclusion.  (*People v. Lopez* (2006) 137 Cal.App.4th 1099 (*Lopez*).)  The defendant in *Lopez* was committed as a mentally disordered offender (MDO) within the meaning of Penal Code section 2970.  (*Id*. at p. 1101.)  At a recommitment hearing, he refused to testify, invoking the Fifth Amendment, and the jury heard his testimony from a prior commitment hearing at which he had been called to testify in the People's case-in-chief.  (*Id*. at pp. 1102, 1104.)  On appeal, he made an argument similar to the one Curlee is making here:  He contended that by admitting his prior testimony, the court had violated his right to equal protection. For this contention, he relied on *Haynie*'s conclusion that an NGI could not be called by the People and argued that MDO's were similarly situated to NGI's.  Therefore, the state was prohibited constitutionally from extending the right not to testify to NGI's but not to

4

MDO's.[4] (*Id.* at pp. 1105–1106.) The Court of Appeal concluded that *Haynie* had been wrongly decided, and that the NGI statute did not grant a person subject to commitment the right not to testify. (*Id.* at p. 1116.) Having reached this conclusion, the court concluded there was no disparate treatment in refusing to afford that right to those subject to commitment under the MDO law, and there was necessarily no resulting denial of equal protection. (*Ibid.*)

As we have explained, *Hudec* resolved this conflict by ruling that an NGI committee could not be compelled to testify at a commitment extension hearing; in doing so, it disapproved *Lopez* to the extent it held that the right to refuse to testify is excluded from the rights granted in Penal Code section 1026.5, subdivision (b)(7). (*Hudec*, *supra*, 60 Cal.4th at p. 832, fn. 5.)

Thus, at the time of the hearing, (1) there was case law that an SVP could be compelled to testify in a commitment hearing, (2) there was a split of authority as to whether NGI's could be required to testify, and (3) the more recent of the cases contributing to that split—*Lopez*—concluded there was no equal protection violation in requiring an MDO to testify. Although our Supreme Court had concluded in another context that SVP's, NGI's, and MDO's were similarly situated (*McKee I*, *supra*, 27 Cal.4th at pp. 1203, 1207), no case had held that SVP's were similarly situated to NGI's for purposes of the privilege not to testify. In the circumstances, it is not unreasonable to assume that an objection would have been futile and to apply the rule that a party is not required to make fruitless objections. (*People v. Turner* (1990)

---

[4] The defendant in *Lopez* also relied on *In re Luis C.* (2004) 116 Cal.App.4th 1397, in which the same panel that decided *Haynie* held that minors could not be compelled to testify in a proceeding to extend a Youth Authority commitment under Welfare and Institutions Code section 1801.5, which provides that a juvenile "shall be entitled to all rights guaranteed under the federal and state constitutions in criminal proceedings." (*Lopez*, *supra*, 137 Cal.App.4th at pp. 1106, 1109.) Because of the differences in the purposes of the juvenile extended commitment statute (§§ 1800–1803) and the adult civil commitment statutes, such as the SVPA and the MDO Act (Penal Code § 2960 et seq.), we shall not focus our discussion on *In re Luis C.* (See *In re Lemanuel C.* (2007) 41 Cal.4th 33, 48–49.)

5

50 Cal.3d 668, 703–704 [pertinent law changed so unforeseeably trial counsel not expected to anticipate change]; *People v. Welch* (1993) 5 Cal.4th 228, 237–238.)

Moreover, as noted in *People v. Brown* (1996) 42 Cal.App.4th 461, 471, " '[a]lthough California authorities on the point are not uniform, our courts have several times examined constitutional issues raised for the first time on appeal, especially when the enforcement of a penal statute is involved [citation], the asserted error fundamentally affects the validity of the judgment [citation], or important issues of public policy are at issue [citation].' " While an SVP commitment is not criminal in nature, it affects the committee's liberty interests (*People v. Landau* (2013) 214 Cal.App.4th 1, 31), and we deem it an appropriate exercise of our discretion to consider Curlee's contention for the first time on appeal. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 887 ["at times a Court of Appeal has exercised its discretion to hear a constitutional claim despite its holding or assumption that the rule of forfeiture applies"].) In any case, we would do so in order to forestall a later claim of ineffective assistance of counsel. (See *People v. Mattson* (1990) 50 Cal.3d 826, 854; *People v. Riazati* (2011) 195 Cal.App.4th 514, 530.)

2. *The Merits*

We therefore go on to consider whether, in light of the rule recently announced in *Hudec*, *supra*, 60 Cal.4th 815, equal protection demands that a person has the right not to testify at an SVP commitment hearing. We begin with an examination of *In re Moye* (1978) 22 Cal.3d 457 (*Moye*). The question at issue in *Moye* was whether an NGI who had been committed for the maximum term of the underlying offense could be held in continued commitment under rules requiring the NGI to prove by a preponderance of the evidence that he or she was no longer in need of commitment. (*Id*. at pp. 460, 463.) The court concluded that NGI's had been "unfairly selected and required to face indefinite confinement until they can establish their own fitness for release." (*Id*. at p. 463.) The court compared NGI commitment to commitment under the former Mentally Disordered Sex Offender (MDSO) Act, which the court has since explained was the forerunner to the SVPA, although those committed under the MDSO Act were civilly committed in place of a prison term rather than after that term. (*Ibid*.; *McKee I*, *supra*, 47 Cal.4th at p. 1196.)

6

The court explained:  "Perhaps the most glaring example of inequality appears when we examine the treatment afforded mentally disordered sex offenders (MDSOs).  MDSOs comprise a class of individuals quite similar to those, such as petitioner, who have been acquitted of a criminal offense by reason of insanity.  Both classes, for example, involve persons who initially have been found to have committed a criminal act, but whose mental condition warrants a period of confinement for treatment in a state institution, in lieu of criminal punishment."  (*Moye*, 22 Cal.3d at p. 463.)  The court noted the "marked differences between the statutory commitment and release procedures" applicable to MDSO's and NGI's, and went on:  "Yet, as we have noted the preconditions to both commitment are similar:  the initial commitment follows commission of a criminal act and is based upon a finding of a mental disorder which might present a danger to others.  The MDSO can be confined for only a limited period, measured by the maximum term for the underlying offense, unless thereafter the *People* (or other committing authority) can establish grounds for an extended commitment.  In contrast, persons in petitioner's class face indefinite, lifetime commitment unless *they* can prove that their sanity has been restored."  (*Id*. at pp. 464–465.)  The court concluded the disparity of treatment required the People to show it had a compelling interest to justify the challenged procedure and that the distinctions were necessary to further that interest.  (*Id*. at p. 465.)

Our high court in *McKee I* relied heavily on the reasoning of *Moye*.  (*McKee I*, *supra*, 47 Cal.4th at pp. 1196–1199.)  In *McKee I*, the court considered constitutional challenges to amendments to the SVPA passed by the voters in 2006.  In pertinent part, Proposition 83 changed an SVP commitment from a two-year term, renewable if the People proved to a jury beyond a reasonable doubt that the committee was still an SVP, to an indeterminate term from which the committee could be released only if he proved by a preponderance of the evidence that he was no longer an SVP.  (*McKee I*, 47 Cal.4th at pp. 1183–1184, 1185–1188; § 6604.)  The court rejected McKee's contentions that the revised law violated the due process clause of the Fourteenth Amendment to the United States Constitution and the ex post facto clause of article I, section 10, of the United States Constitution.  (*Id*. at pp. 1184, 1188–1195.)  The court found merit, however, in his

7

contention that the law raised equal protection concerns. (*Id.* at p. 1184, 1196.) After discussing *Moye* in detail, the court noted: "Decisions by this court and the United States Supreme Court before and since *Moye* have used the equal protection clause to police civil commitment statutes to ensure that a particular group of civil committees is not unfairly or arbitrarily subjected to greater burdens. [Citations.]" (*Id.* at p. 1199.)

McKee's equal protection challenge was based on the fact that two other groups of civil committees—MDO's and NGI's—remained subject to commitments of only a limited term, and the People retained the burden to show beyond a reasonable doubt that the commitment was appropriate at each successive recommitment hearing. (*McKee I*, *supra*, 47 Cal.4th at pp. 1200–1202, 1207; Pen. Code, § 1026.5, subd. (b).) The Supreme Court agreed that this discrepancy implicated McKee's right to equal protection. It first concluded that "MDO's and SVP's are similarly situated for our present purposes." (*McKee I*, 47 Cal.4th at p. 1203.) The court explained that "both MDO's and SVP's 'have been found, beyond a reasonable doubt, to suffer from mental disorders that render them dangerous to others. The dangerous finding requires only an assessment of future dangerousness. It does not require proof of a recent overt act. Both have been convicted of a serious or violent felony. At the end of their prison terms, both have been civilly committed to the Department of Mental Health for treatment of their disorders. Furthermore, the purpose of the MDO Act and the SVPA is the same: to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders.' [Citations.] We agree that these common features make SVP's and MDO's similarly situated. Therefore, when the state makes the terms of commitment or recommitment substantially less favorable for one group than the other, the case law reviewed above teaches that it is required to give some justification for this differential treatment. [¶] In other terms, imposing on one group an indefinite commitment and the burden of proving they should not be committed, when the other group is subject to short-term commitment renewable only if the People prove periodically that continuing commitment is justified beyond a reasonable doubt, raises a

8

substantial equal protection question that calls for some justification by the People." (*Id.* at p. 1203.)

The court did not conclude that differentiation between the various types of civil committees was necessarily impermissible, but rather that that differentiation "must be made with reference to the goals of the statutes, i.e. treatment of the mentally disordered or public protection." (*McKee I*, *supra*, 47 Cal.4th at p. 1204.) Thus, the Legislature could make "reasonable distinctions between its civil commitment statutes based on a showing 'that those who are reasonably determined to represent a greater danger may be treated differently from the general population.' " (*Ibid.*) In light of the facts that both SVP's and MDO's had suffered felony convictions and had been determined by mental health experts to suffer from mental disorders that make them a continuing danger, "the reasons for differential treatment are not immediately obvious from the face of the two statutory schemes." (*Id.* at pp. 1204–1205.)

Our Supreme Court went on to agree with McKee's argument that NGI's and SVP's were also similarly situated. (*McKee I*, *supra*, 47 Cal.4th at p. 1207.) The court explained: "NGI's as discussed are those who have committed criminal acts but have been civilly committed rather than criminally penalized because of their severe mental disorder. . . . We agree that, as with MDO's, the People have not yet carried their burden of justifying the differences between the SVP and NGI commitment statutes." (*Ibid.*)

The court emphasized, however, that its conclusion did not mean the People *could not* meet its burden of showing the differential treatment of SVP's was justified, but merely that it had *not yet done so*. (*McKee I*, *supra*, 47 Cal.4th at p. 1207.) The court therefore remanded the matter to the trial court to allow the People to make the appropriate showing. "It must be shown that, notwithstanding the similarities between SVP's and MDO's, the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society." (*Id.* at pp. 1207–1208.) For example, the court stated, the People might be able to demonstrate that SVP's were more likely than other civil committees to reoffend, or that they might pose a greater risk to a particularly

9

vulnerable set of victims, such as children. (*Id*. at p. 1208.) The court therefore remanded the matter to the trial court "to determine whether the People, applying the equal protection principles articulated in *Moye* and related cases discussed in the present opinion, can demonstrate the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment." (*Id*. at pp. 1208–1209, fn. omitted.) That showing, if appropriate, could include expert testimony. (*Id*. at p. 1209.)

On remand, the trial court conducted an evidentiary hearing and concluded the People had met their burden to justify the differential treatment of SVP's under the standards of *McKee I*. (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1330 (*McKee II*).) The People presented evidence supporting a reasonable inference that SVP's posed a higher risk of sexual reoffending then did MDO's or NGI's. (*Id*. at pp. 1340–1342.) The People also presented evidence that victims of sex offenses suffered "unique and, in general, greater trauma than victims of nonsex offenders." (*Id*. at p. 1342.) In addition, there was evidence that SVP's were far less likely than MDO's and NGI's to have major mental illnesses, such as schizophrenia, bipolar disorder, major depression, or psychosis, which were often effectively treated with psychotropic medications and subsequent psychosocial support treatment, and that about two-thirds of MDO's and NGI's complied with their treatment programs, typically resulting in their decertification after about three years. (*Id*. at pp. 1344–1346.) There was also evidence that MDO's and NGI's with sexual predicate offenses were not more likely to commit a new sexual offense, as opposed to another dangerous offense, upon release. (*Id*. at p. 1345.) In contrast, SVP's were far *more* likely than MDO's and NGI's to be diagnosed with pedophilia or other paraphilias;[5] they had treatment plans that were not based on medication and that did not

---

[5] There was evidence that patients with paraphilia had "fantasies, urges, or behaviors specific to something not normally considered sexual (i.e., deviant). For example, a patient may have had sexually deviant behaviors regarding children. Paraphilia could, but does not necessarily, rise to the level of an SVP-type mental illness. There usually are no outward signs that a person has paraphilia. Patients with paraphilia typically develop deviant sexual fantasies in early adolescence and probably begin their

10

decrease their deviant sexual interests; they were more likely to commit a new sexual offense; only about 25 percent of SVP's participated in treatment; and SVP's typically took longer than MDO's and NGI's to complete treatment. (*Id*. at pp. 1344–1346.) The trial court found, and the Court of Appeal agreed, that the evidence supported a reasonable perception by the electorate that SVP's were clinically distinct from MDO's and NGI's and that as a result of those distinctions, SVP's were more difficult to treat and more likely to commit additional sexual offenses than were MDO's and NGI's. (*Id*. at p. 1347.)

The first question before us, then, is whether SVP's are similarly situated to NGI's for purposes of whether they may be compelled to testify at their commitment hearings. (See *People v. Buffington* (1999) 74 Cal.App.4th 1149, 1155 ["If persons are not similarly situated for purposes of the law, an equal protection claim fails at the threshold"].) Relying on the reasoning of *Moye* and *McKee I*, we answer this question in the affirmative. The preconditions to commitment are similar: Both groups have committed a criminal act and have been found to suffer from a mental condition that might present a danger to others. (See *Moye*, *supra*, 22 Cal.3d at p. 464.) At the end of the SVP's prison term, and at the end of the term for which an NGI could have been imprisoned, each is committed to the state hospital for treatment if, at the end of that period, the district attorney proves in a jury trial beyond a reasonable doubt that the person presents a danger to others as a result of a mental disease, defect, or disorder. (See *McKee I*, *supra*, 47 Cal.4th at pp. 1203, 1207; §§ 6600, subd. (a)(1), 6604 [SVP]; Pen. Code, § 1026.5, subd. (b) [NGI].) The purpose of the commitment is the same: To protect the public from those who have committed criminal acts and have mental disorders and to provide mental health treatment for the disorders. (See *McKee I*, 47 Cal.4th at pp. 1203, 1207; *Moye*, 22 Cal.3d at p. 466; Pen. Code, § 1026.5, subd. (b).)

---

sexual offending during adolescence. Paraphilia typically remains stable or constant throughout a patient's lifetime." (*McKee II*, *supra*, 207 Cal.App.4th at p. 1345.) Patients with paraphilia often carefully planned and executed their offenses; patients with severe mental illnesses, on the other hand, generally committed impulsive or opportunistic offenses, and rarely reoffended sexually. (*Ibid*.)

Despite the holding and reasoning of *McKee I*, the Attorney General argues that SVP's are not similarly situated to NGI's for purposes of whether they may be called as witnesses for the prosecution because an SVP is initially evaluated while in the custody of the Department of Corrections and Rehabilitation (§ 6601, subd. (a)), while the NGI has been committed to the Department of State Hospitals for treatment since having been found insane at the time of the offense (Pen. Code, §§ 1026, subd. (a), 1026.5, subd. (a)(1)). As a result, the Attorney General argues, the state hospital has "a wealth of information" on an NGI and is in a good position to determine whether the person needs further treatment, without the need for the NGI's testimony at trial.

Curlee disagrees with this assessment. He points out after an SVP petition is filed, the person is evaluated by at least two practicing psychiatrists or psychologists and a probable cause hearing takes place (§§ 6601, subd. (d), 6601.5); if the judge determines there is probable cause, the person may then be committed to the state hospital pending trial (§ 6602.5, subd. (a)). Curlee argues the person may remain in a state hospital for years before trial, and during that time, staff at the state hospital have ample time to evaluate whether he or she needs treatment.

On the current record, it is impossible for us to determine whether the People in fact are likely to have more information on an NGI's mental state than on that of an SVP. Logically, it appears to us that this dispute is more closely connected to the question of whether the Attorney General has justified the disparate treatment of NGI's and SVP's than to the question of whether they are in fact similarly situated. We agree with Curlee that for our present purposes, NGI's and SVP's are similarly situated.[6]

_____

[6] In another attempt to persuade us that SVP's and NGI's are not similarly situated for present purposes, the Attorney General also points out that the United States Supreme Court has approved different standards of proof for the class of potential civil-commitment candidates and the class of insanity acquittees. (*Jones v. United States* (1983) 463 U.S. 354, 370 (*Jones*).) This argument is unavailing. In *Jones*, the court allowed a lower standard of proof for NGI's—that is, *less favorable* treatment—because they had already advanced their insanity as a defense and proved their criminal acts were a result of their mental illness. (*Id*. at p. 367.) *Jones* provides no justification for *more favorable* treatment of NGI's than of other civil committees.

12

The next question we face is whether the People have justified the disparate treatment. On this record, we conclude that they have not done so. The Attorney General advances a number of possible justifications. First, she argues that hospital records are more available in an NGI extension hearing than in an SVP commitment proceeding, and therefore the SVP's testimony is more necessary than that of an NGI. That may or may not be true, but, as we have explained, the record before us is inadequate for us to make that determination.

The Attorney General also relies on the factors that were set forth in *McKee II* to justify an indefinite commitment for SVP's. As we have explained, the court concluded in *McKee II* that there was evidence SVP's were more likely to commit new sexual offenses when released than other civil committees; victims of sex offenses suffered unique and, in general, greater trauma, than victims of other offenses; and SVP's were less likely to participate in treatment and more likely to be deceptive and manipulative than other groups. (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1340–1346.) While the court in *McKee II* concluded these factors justified imposing *indeterminate commitments* on SVP's but not on MDO's or NGI's, we are not persuaded they necessarily show that that an SVP's *testimony* is more necessary than that of NGI's. The court in *McKee II* carefully delineated the nexus between the evidence and the propriety of an indeterminate commitment—not only was the trauma to victims of sexual crimes greater, but SVP's were less receptive and amenable than MDO's and NGI's to treatment that would reduce the risk of reoffense and, where successful, the treatment for an SVP typically took longer than for members of the other groups. (*Id.* at pp. 1342–1347.) Here, the Attorney General has not yet shown a similar nexus between these factors and the need for compelled testimony from an SVP, but not an NGI.

We must also address the issue of prejudice. The Attorney General contends that, even if Curlee should not have been compelled to testify, the error was harmless because it is not reasonably probable he would have achieved a more favorable outcome had he not testified in the People's case-in-chief. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) As noted in *Haynie*, however, "[b]y calling the person in its case-in-chief, the state is

13

essentially saying that his or her testimony is necessary for the state to prove its case. We have no doubt that a committee so compelled to testify is prejudiced under these circumstances. The California Supreme Court noted in *Cramer v. Tyars* (1979) 23 Cal.3d 131 [] that permitting the jury to observe the person sought to be committed and to hear him speak and respond provided 'the most reliable proof and probative indicator of the person's present mental condition.' [Citation.] As such, we cannot conclude that compelling [the committee] to testify, even if his testimony was in some regards cumulative to that of other witnesses, was harmless error." (*Haynie*, *supra*, 116 Cal.App.4th at p. 1230.)

We emphasize that, like our high court in *McKee I*, we do not conclude the People cannot meet their burden to show the testimony of an NGI is less necessary than that of an SVP. We merely conclude that they have not yet done so. In our view, the proper remedy is to remand the matter to the trial court to conduct an evidentiary hearing to allow the People to make an appropriate showing.

### B. Challenges to 2013 Amendments to SVPA

As we have explained briefly above, as originally enacted, the SVPA provided for a two-year term of confinement and treatment of SVP's; new petitions requesting successive two-year commitments had to be filed to extend the commitment, at which time the People again had the burden of proof. (*McKee I*, *supra*, 47 Cal.4th at p. 1185, citing Stats. 1995, ch. 763, § 3, p. 5922 & former §§ 6603, subd. (d), 6604, 6604.1, 6605.) In 2006, the California voters amended the Act in a number of ways, including providing that terms of commitment for SVP's would be indeterminate. (*McKee I*, 47 Cal.4th at pp. 1186–1187.) The Department was required to examine each SVP and file an annual report considering whether the committed person currently met the definition of an SVP, whether conditional release to a less restrictive placement or an unconditional release was in the person's best interest, and whether conditions could be imposed that would adequately protect the community. If the Department determined the person was no longer an SVP or conditional release was appropriate, it would authorize the person to petition for either conditional release to a less restrictive placement or

14

unconditional discharge. If the state opposed the petition, it had the burden of proving beyond a reasonable doubt that the person still met the definition of an SVP. (*Id*. at p. 1187.) If the Department did not authorize a petition, a committed person could nevertheless file a petition for conditional release or unconditional discharge. (*Ibid.*, citing former § 6608, subd. (a).) The committed person would bear the burden of proof by a preponderance of the evidence. (*McKee I*, 47 Cal.4th at p. 1187, citing former § 6608, subd. (i).) In *McKee I*, our Supreme Court held that the SVPA's provisions that commitments were indefinite and that committed persons had the burden to show by a preponderance of the evidence that they were no longer SVP's did not offend due process. (*McKee I*, 47 Cal.4th at pp. 1188–1193.)

Section 6608 was amended in 2013 to allow a committed person to petition in the first instance only for *conditional* release if the Department does not authorize the petition. (§ 6608, subd. (a), as amended by Stats. 2013, ch. 182, § 3, p. 2257.) After at least one year on conditional release, the committed person may then petition for unconditional discharge. (§ 6608, former subd. (k), Stats. 2013, ch. 182, § 3, p. 2259, now subd. (m), as amdended by Stats. 2014, ch. 877, § 1, p. 5676.) Curlee contends this change in the SVPA, under which an SVP may no longer seek immediate unconditional discharge without the recommendation of the Department but must instead petition first for conditional release and then wait a year, violates due process.

We conclude this issue is not ripe for review and therefore decline to address it. The amendments about which Curlee complains had not yet been enacted at the time of the order under appeal. As the court in *People v. Gray* (2014) 229 Cal.App.4th 285, 292, recently explained in refusing to consider a similar contention, "[w]e are concerned with the constitutionality of the SVPA as it existed when appellant was adjudged an SVP, not the statutory scheme as it may or may not be applied to appellant in the future."

Moreover, as the Attorney General points out, Curlee has not sought release or discharge without the Department's authorization on the ground he is no longer an SVP, and has therefore suffered no injury from the requirements of the current version of

15

section 6608.[7] His appeal is from his initial commitment as an SVP, not from a decision under section 6608, and he cannot show that he has been aggrieved by a ruling under the SVPA's current release procedures. Even assuming those provisions were to be applied to him in the future, any opinion we issued now on the matter would be purely advisory and based on a hypothetical set of facts. (See *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170 ["The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions"]; *Farm Sanctuary, Inc. v. Department of Food & Agriculture* (1998) 63 Cal.App.4th 495, 502 [court will not adjudicate dispute if " 'asked to speculate on the resolution of hypothetical situations' "]; cf. *People v. Carroll* (2007) 158 Cal.App.4th 503, 508, fn. 2 [refusing to issue advisory opinion on constitutionality of SVPA provision that was not basis for decision under review].) "One who seeks to raise a constitutional question must show that his rights are affected injuriously by the law which he attacks and that he is actually aggrieved by its operation." (*People v. Williams* (1966) 247 Cal.App.2d 169, 170.) Curlee cannot make this showing.

### C. Motion to Continue Trial

#### 1. Background

Trial was scheduled for July 16, 2012, after the trial court granted Curlee's motion for a continuance due to his trial counsel's unavailability. On July 11, 2012, five days before the rescheduled trial date, Curlee again moved to continue the trial, contending an expert witness was unavailable and he needed additional time to find a replacement evaluator or expert. According to the motion, Curlee had been evaluated upon his parole release by two Department evaluators. One of them, Dr. Kimberly Smith, had concluded he was not an SVP. Dr. Smith had recently informed defense counsel that the Department had deemed her unqualified to perform SVP evaluations because she did not

---

[7] As we have explained, our Supreme Court has concluded an indefinite SVP commitment does not offend due process. (*McKee I*, *supra*, 47 Cal.4th at pp. 1188–1193.) We accordingly discern no injury to Curlee from the fact that he has received an indefinite commitment.

16

have five years' experience in the diagnosis and treatment of mental disorders,[8] that her contract had not been renewed, and that she was no longer available to testify at Curlee's trial.[9] The Department had told defense counsel Dr. Smith had left her employment in a contract dispute and that it would not pay her fee to testify. Defense counsel had hired a process server to serve Dr. Smith, but he believed she was avoiding service.

At a trial readiness conference on July 12, 2012, the trial court indicated it would likely grant the continuance. The deputy district attorney asked the court not to make a decision until the next hearing.

On the day scheduled for trial, the deputy district attorney informed the court that Dr. Smith had told both her and defense counsel that she had received her subpoena and was available to testify in the week of July 30. Defense counsel told the court that Dr. Smith had changed her original opinion that Curlee was not an SVP and that he wanted the opportunity to conduct a deposition of Dr. Smith and find a replacement evaluator if Dr. Smith was going to testify that Curlee was an SVP.[10] The deputy district attorney opposed the request for a continuance on the ground that because of contractual issues with the Department, her expert witnesses might not remain available. The trial court denied the continuance motion. In doing so, it noted that Dr. Smith was available to testify and that if she testified that Curlee was an SVP, Curlee would be able to impeach her testimony with her earlier report opining that he was not an SVP.

---

[8] Section 6601 provides that if the Secretary of the California Department of Corrections and Rehabilitation determines, before an inmate's release, that the inmate may be an SVP, the secretary shall refer the person for an evaluation (§ 6601, subd. (a)(1)), which shall be carried out by two practicing psychiatrists or psychologists (§ 6601, subd. (d)). If the two professionals do not agree on whether the person is an SVP, the Director of Mental Health must arrange for further examination by two independent professionals, who must have at least five years of experience in the diagnosis and treatment of mental disorders. (§§ 6601, subds. (e), (g).)

[9] In an email, Dr. Smith also told defense counsel the deputy district attorney was going to forward her additional information regarding Curlee's juvenile cases.

[10] Dr. Smith informed defense counsel she had changed her opinion as a result of additional information she had been provided regarding two offenses Curlee had committed as a juvenile.

17

Curlee did not call Dr. Smith as a witness during the trial.

2. *Discussion*

Curlee contends the trial court abused its discretion in denying his request for a continuance of the trial.  He argues that Dr. Smith had not been properly served and, as a result, might not have been available to testify, that her change of opinion was unexpected and he acted expeditiously to seek a continuance when he learned of it, that his counsel would have rendered ineffective assistance if he had called her as a witness without first taking her deposition, and that he needed additional time to retain a new expert witness in the event Dr. Smith was in fact of the opinion he was an SVP.

" 'The decision to grant or deny a continuance is committed to the sound discretion of the trial court.  [Citation.]  The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court.  [Citation.]  A reviewing court may not disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing in the record.' " (*Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1126.)  However, " '[t]rial court discretion is not unlimited.  "The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.  [Citation.]" [Citations.]' [Citation.]  [¶]  . . . 'The trial judge must exercise his discretion with due regard to all interests involved.  The denial of a continuance which has the practical effect of denying the applicant a fair hearing is often held reversible error.  [Citations.]' " (*Cotton v. StarCare Medical Group, Inc.* (2010) 183 Cal.App.4th 437, 444–445.)

An arbitrary denial of a continuance may deny a party due process.  " 'However, not every denial of a request for more time can be said to violate due process, even if the party seeking the continuance thereby fails to offer evidence.  [Citation.]' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 650.)  The court may not exercise its discretion to so as to deprive the defendant of a reasonable opportunity to prepare.  (*Ibid.*)  However, " '[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to

18

violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.)[11]

Factors that may be considered in determining whether a court has abused its discretion in denying a continuance include "[t]he unavailability of an essential lay or expert witness because of death, illness, or other excusable circumstances" or "[a] party's excused inability to obtain essential testimony, documents, or other material evidence despite diligent efforts." (Cal. Rules of Court, rule 3.1332(c)(1), (6).) The court may also consider such factors as the proximity of the trial date, whether there was any previous continuance, the length of the continuance requested, the availability of alternative means to address the problem giving rise to the request for a continuance, and the prejudice that parties or witnesses will suffer from a continuance. (Cal. Rules of Court, rule 3.1332(d).)

We see no abuse of discretion in the trial court's denial of Curlee's request for a continuance. As we have noted, the trial had already been continued once at Curlee's request, in March 2012. The July 2012 request at issue here was made on the ground that Dr. Smith was unavailable to testify due to the termination of her contract with the Department. Her subsequent correspondence, however, indicated she had received the subpoena and would be available to testify during trial. Curlee contends that Dr. Smith was not personally served with her subpoena, and that she was therefore not obliged to appear at trial. Based on Dr. Smith's own statements, however, the trial court could reasonably conclude she was available as a witness.

Moreover, Curlee has not shown Dr. Smith's testimony was essential. At trial, Curlee called his own expert witness, Dr. Christopher Fisher, a clinical psychologist who worked at Napa State Hospital in a unit specializing in the evaluation and treatment of sex offenders. Dr. Fisher opined that Curlee did not have a diagnosed mental disorder that predisposed him to commit sexual offenses and that he was unlikely to commit

---

[11] The same standard is applied in civil and criminal proceedings. (*People v. Ranger Ins. Co.* (2000) 81 Cal.App.4th 676, 679.)

19

another sex offense if released—that is, that he was not an SVP—and explained at length the basis for his opinion. In the circumstances, the denial of the continuance did not prevent Curlee from presenting his case to the jury. The trial court neither abused its discretion nor denied Curlee due process.

## III.     DISPOSITION

The matter is remanded to the trial court for further proceedings. On remand, the trial court is directed to conduct an evidentiary hearing at which the People will have the opportunity to show that the differential statutory treatment of SVP's and NGI's is justified. If the trial court determines the People have carried their burden to do so, it shall confirm its order finding Curlee an SVP and committing him to the Department. If it determines the People have not carried their burden, the trial court shall conduct a new hearing under the SVPA to determine whether Curlee is an SVP.

_____
Rivera, J.

We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JOEL CURLEE,<br><br>     Defendant and Appellant. | A136337<br><br>(Alameda County<br>Super. Ct. No. 165110) |

THE COURT:

The written opinion, which was filed on May 20, 2015, is ordered modified as follows:

On page one, the sentence stating "We do not agree with Curlee on these points" should be changed to read:

"In the unpublished portion of this opinion, we reject these contentions."

No change in judgment.

Further, the written opinion has now been certified for partial publication pursuant to rules 8.1105(b) and 8.1110.

Dated: _____ _____, P.J.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.B and II.C.

People v. Curlee (A136337)


Trial Court                              Alameda County Superior Court


Trial Judge                              Honorable Allan Hymer


Attorneys:

Rudolph G. Kraft, by appointment of the Court of Appeal under the First District Appellate Project, for Defendant and Appellant.

Office of the Attorney General, Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffery M. Laurence, Acting Senior Assistant Attorney General, Laurence K. Sullivan, Supervising Deputy Attorney General, Moona Nandi, Deputy Attorney General, and Dane R. Gillette, for Plaintiff and Respondent.

*People v. Curlee*, A136337