Filed 2/18/16  P. v. Small CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>FREDERIC BYRON SMALL,<br><br>   Defendant and Appellant. | G050103<br><br>(Super. Ct. No. 94WF1665)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Lance Jensen, Judge.  Reversed and remanded.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jule L. Garland, Assistant Attorney General, Peter Quon, Jr., Randall D. Einhorn, Eric A. Swenson and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Frederic Byron Small appeals from a judgment entered pursuant to Penal Code section 2962 (all further undesignated statutory references are to this code), declaring him to be a mentally disordered offender (MDO) and thus subject to mandatory inpatient treatment at a state mental hospital as a condition of his parole. He contends the trial court violated his rights under the Fifth Amendment of the United States Constitution and his constitutional right to equal protection, when it compelled him to testify at the hearing to determine whether he qualified as a MDO. We reject his first contention but conclude his second may have merit.

As defendant points out, the determination that a defendant qualifies as a MDO, and thus may be confined for treatment in a state mental hospital following the completion of his prison term, is similar to the determination that a person found not guilty of a crime by reason of insanity (NGI) should be confined in a state mental hospital for treatment past the maximum term of commitment for his or her crime. In the latter proceeding, however, the governing statute provides the defendant is "entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings" (§ 1026.5, subd. (b)(7)), which includes the right not to testify in the proceeding. (*Hudec v. Superior Court* (2015) 60 Cal.4th 815.) By contrast, defendant here asserted a right not to testify in the MDO proceeding, but the trial court rejected the assertion and compelled his testimony.

On appeal, the Attorney General makes several arguments in an attempt to explain why the Legislature's extension of the right not to testify to the subjects of proceedings to extend the commitments of persons previously found to be NGI, but not to the subjects of proceedings to declare someone an MDO, is not a denial of equal protection. None of those arguments is persuasive. We conclude that for purposes of asserting a right not to testify, these two groups are similarly situated. Nor are we persuaded by the Attorney General's attempt to justify this disparate treatment for these two groups. Thus, in accordance with *People v. McKee* (2010) 47 Cal.4th 1172, 1207

2

(*McKee*) and *People v. Curlee* (2015) 237 Cal.App.4th 709, we reverse the judgment and remand the case to the trial court to give the prosecutor the chance to make the appropriate showing that disparate treatment is justified.

## FACTS

Defendant was convicted of two counts of forcible lewd conduct, both arising from an incident in which he approached a 13-year-old girl at a bus stop and inquired whether she would like to smoke "pot" and "make love." When she declined, he grabbed her breast and placed her hand on his penis. We affirmed his conviction in 1997. (*People v. Small* (May 5, 1997, G018852) [nonpub. opn.].)

In February 2012, the district attorney filed a petition to commit defendant as a MDO, pursuant to section 2970. While that petition was still pending, the district attorney filed an additional petition to extend defendant's commitment for an additional year, until August 2014. The petition alleged defendant suffers from a severe mental disorder, not in remission and which cannot be kept in remission if his treatment is discontinued. The petition further alleged that as a result of his severe mental disorder, defendant represents a substantial danger of physical harm to others.

In April 2014, the district attorney filed a proposed witness list for trial that included defendant. Defendant filed a motion in limine seeking an order preventing the district attorney from calling him as a witness. Defendant argued he should be entitled to the same rights afforded to a person previously adjudicated to be NGI, in a proceeding where the prosecutor seeks to extend that person's commitment past the maximum term of confinement for his or her crime. Among those rights would be the right not to testify at trial. The trial court denied the motion and ruled defendant could be compelled to testify.

Defendant testified at the trial in April 2014, and at its conclusion, the jury returned a finding that defendant qualified as an MDO as alleged in the petition.

DISCUSSION

1. *The MDO Proceeding*

As explained by our Supreme Court, the MDO statutory scheme provides that "[a]s a condition of parole, a prisoner may be designated and civilly committed as an MDO for involuntary treatment of a 'severe mental disorder' if certain conditions are met." (*People v. Allen* (2007) 42 Cal.4th 91, 99, fn. omitted.)  Specifically, the law "requires civil commitment of a state prisoner during and after parole when a chief psychiatrist of the Department of Corrections and Rehabilitation has certified that the prisoner suffers from a severe mental disorder that is not or cannot be kept in remission without treatment, that the disorder was one of the causes of or an aggravating factor in the prisoner's qualifying crime, that the prisoner has been in treatment for the disorder for at least 90 days within the year preceding release on parole, and that the prisoner represents a substantial danger of physical harm to others by reason of the disorder. [Citation.]  A prisoner may challenge the MDO certification by requesting a hearing before the Board of Parole Hearings (Board) and, if unsuccessful, in superior court as to whether the prisoner "'meets the criteria in Section 2962.'"" (*People v. Harrison* (2013) 57 Cal.4th 1211, 1215.)  At trial, "'[t]he standard of proof shall be beyond a reasonable doubt, and if the trial is by jury, the jury shall be unanimous in its verdict.'" (*People v. Allen, supra*, 42 Cal.4th at p. 99.)

2. *Defendant's Fifth Amendment Claim*

Defendant asserts the trial court's refusal to afford him the right not to testify in the MDO proceeding amounted to both a denial of his Fifth Amendment right

4

not to testify against himself, and a denial of equal protection. His first argument is easily disposed of because it is well-settled that although a proceeding to involuntarily commit a person for treatment affects his or her liberty interest, it is not criminal in nature. "[T]he MDO provisions are neither punitive in purpose nor effect and their procedural safeguards do not require us to transform the hearing into a criminal trial." *People v. Superior Court (Myers)* (1996) 50 Cal.App.4th 826, 834.) Instead, "'[t]he MDO Act has the dual purpose of protecting the public while treating severely mentally ill offenders.'" (*People v. Harrison, supra*, 57 Cal.4th at p. 1218.) Where the statutory scheme is not punitive in either purpose or effect, the Fifth Amendment is not implicated. (*Allen v. Illinois* (1986) 478 U.S. 364, 369 [106 S.Ct. 2988, 2992, 92 L.Ed. 2d 296].)

*3. Defendant's Equal Protection Claim*

Defendant's equal protection argument fares better, however. He bases his argument on the contention that (1) as the subject of an MDO proceeding at the end of his prison term, he is similarly situated to a person who is facing the extension of a term of civil confinement after being found NGI, and (2) the person found NGI is, in that comparable situation, afforded the right not to testify in connection with the proceeding to extend the commitment. Specifically, section 1026.5 provides that in a proceeding where the prosecutor seeks to extend the commitment of a person found to be NGI beyond the maximum term of confinement for the crime committed, "[t]he person shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings." (See § 1026.5, subd. (b)(7).) And as recently confirmed by our Supreme Court in *Hudec v. Superior Court, supra*, 60 Cal.4th 815 (*Hudec*), those rights do include the right not to testify.

"'The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.'" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253

5

(*Cooley*); *People v. Guzman* (2005) 35 Cal.4th 577, 591.) Moreover, "[d]ecisions by [the California Supreme Court] and the United States Supreme Court . . . have [long] used the equal protection clause to police civil commitment statutes to ensure that a particular group of civil committees is not unfairly or arbitrarily subjected to greater burdens." (*McKee, supra*, 47 Cal.4th at p. 1199.)

As explained in *Cooley*, the first issue to be addressed when an equal protection claim is made is whether the state has adopted a classification that affects two or more similarly situated persons or groups in an unequal manner. "This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.'" (*Cooley, supra*, 29 Cal.4th at p. 253.) "If persons are not similarly situated for purposes of the law, an equal protection claim fails at the threshold." (*People v. Buffington* (1999) 74 Cal.App.4th 1149, 1155.)

The Attorney General's initial brief did not address defendant's equal protection claim on the merits. Instead, it argued that because *Hudec* was then pending before the Supreme Court, and some intermediate appellate courts had actually rejected the claim that section 1026.5 afforded a person found to be NGI the right not to testify in a proceeding to extend his or her commitment, it would be speculative and premature to consider whether the existence of such a right would give rise to an equal protection argument in this case. However, in January 2015, after this case had been fully briefed, the Supreme Court decided *Hudec* and concluded section 1026.5 did afford the subject of a proceeding to extend an NGI commitment the right not to testify. (*Hudec, supra*, 60 Cal.4th at p. 830.)

Consequently, in May 2015, we ordered the parties to file supplemental briefs addressing the impact of *Hudec* on the equal protection argument asserted by defendant. We also invited the parties to address related issues, such as whether a person facing the possibility of continued involuntary confinement as a MDO under section 2960

6

et seq., is similarly situated to a person who was previously found NGI and is facing the possibility of extended commitment under section 1026.5, subd. (b)(1).

In his supplemental brief, defendant reiterated his contention that a person facing commitment as an MDO is confronting the same denial of liberty as a person facing an extended commitment following completion of an initial term of confinement as a NGI – and for essentially the same reasons. In both situations, the prosecution is attempting to establish the defendant is a danger to society because of a psychiatric condition that requires treatment in a locked facility for an additional period (a term of two years in the case of a person found to be NGI (§ 1026.5, subd. (b)(8)), and for the term of the defendant's parole in the case of a MDO (§§ 2962, 2968). In both cases, the purpose of the commitment is the same: To protect the public from those who have committed criminal acts and have mental disorders and to provide mental health treatment for the disorders. (Cf. §§ 1026.5, subd. (b)(1), 2962, subd. (d)(1).)

Moreover, the procedural protections given to the subjects of these proceedings are similar. In a proceeding to extend the commitment of a person found to be NGI, the subject is entitled to be represented by counsel and to have a jury trial (§ 1026.5, subd. (b)(3)) and is also given a blanket entitlement "to the rights guaranteed under the federal and State Constitutions for criminal proceedings." (§ 1026.5, subd. (b)(7).) And in the case of an alleged MDO, the statute specifies various protections found in criminal proceedings – e.g., it places the burden of proof on the person or agency that certified the person as requiring further treatment under the relevant statute, and the burden of proof is beyond a reasonable doubt. Additionally, the rules of criminal discovery, as well as civil discovery apply, the subject of the proceeding is entitled to be represented by an attorney and to a jury trial, and if the trial is by a jury, the jury must be unanimous in its verdict. (§ 2966, subd. (b).)

Defendant also relied on *People v. Curlee, supra*, 237 Cal.App.4th 709, a case decided in the wake of *Hudec* which addressed a similar equal protection claim

7

grounded on the fact that a person found NGI could refuse to testify at the hearing to extend his or her commitment, but a person facing commitment as a sexually violent predator (SVP) was not entitled to that same right. Relying on *McKee*, the *Curlee* court found that for purposes of assessing the necessity of their testimony at trial, a person alleged to be a SVP was similarly situated to a person facing an extended commitment after being found NGI, but then remanded the case to the trial court to allow the prosecutor an opportunity to justify the disparate treatment. (*Id.* at pp. 722-723.)

### 3.1. The Attorney General's Contention the Groups Are Not Similarly Situated

The Attorney General responded to defendant's equal protection argument by first asserting persons found to be NGI are not similarly situated to persons facing civil commitment for other reasons. Specifically, the Attorney General relies on *Jones v. United States* (1983) 463 U. S. 354, 367 [103 S.Ct. 3043, 77 L.Ed.2d 694] for the proposition that the "United States Supreme Court has recognized that there are 'important differences between the class of potential civil-commitment candidates and the class of insanity acquittees.'" However, the difference highlighted in that case is that a person who has been acquitted of a crime on the basis of insanity has himself "advance[d] insanity as a defense and prove[d] that his criminal act was a product of his mental illness" (*ibid.*), a distinction that justified affording those NGI acquittees *less* procedural protection than were afforded to other candidates for civil commitment. That distinction certainly does not help the Attorney General, when the crux of defendant's argument is that those defendants who have advanced (and proved) insanity as a defense to their criminal charge are being afforded *greater* procedural protections than he is.

The Attorney General also relies on *Allen v. Illinois, supra*, 478 U.S. at pp. 372-375, in which the Supreme Court notes that because civil commitments are nonpunitive in nature, the defendant would have no Fifth Amendment right against

8

compulsory testimony in a commitment proceeding. But that point is equally applicable to a person found to be NGI – a person who, after all, has been *acquitted* of the crime charged – as it is to a person who is facing a civil commitment as an MDO following completion of a prison term. As we have already explained, neither of these persons is facing *punishment*, and thus neither would be entitled to invoke the protections of the Fifth Amendment. But as confirmed in *Hudec*, our Legislature has nonetheless *chosen* to extend the right against compulsory testimony to persons facing extended commitment after being found to be NGI – along with all of the other rights inherent in a criminal proceeding. By doing so, the Legislature triggers equal protection scrutiny. "[W]hen certain due process protections for those civilly committed are guaranteed by statute, even if not constitutionally required, the denial of those protections to one group must be reasonably justified in order to pass muster under the equal protection clause." (*McKee, supra*, 47 Cal.4th at p. 1207.)

Indeed, the crux of defendant's argument is that it is the Legislature's decision to extend such a right to persons found to be NGI, but not to persons who are facing similar exended civil commitment as an MDO, which violates the constitutional guarantee of equal protection.

The Attorney General next asserts there is a distinction between persons found to be NGI and persons facing commitment as an MDO, in that a person found NGI has the affirmative burden of proving his restoration of sanity, while the burden is on the prosecutor to establish that a defendant should be committed as an MDO. The comparison is inapt, however, because it focuses on the burden of proof placed on a person found NGI, but who is seeking to obtain release *before the end of his or her maximum term of confinement*, on the basis of restored sanity. (See § 1026.2.) There is no comparable proceeding for a MDO.

Instead, the proper comparison to be made in this case is between the proceeding to civilly commit a person as an MDO following the completion of his or her

9

prison term (§ 2966), and the proceeding to *extend* the commitment of a person found NGI *beyond their maximum term of confinement*. (§ 1026.5) In both of those proceedings, the burden of proof is placed on the prosecutor to prove the defendant's mental state. There is no distinction.

Finally, the Attorney General appears to argue that MDOs should not be considered similarly situated to persons found NGI because our Legislature did not *intend* to confer the same rights on these groups. Instead, the Legislature purportedly intended to treat MDOs like persons civilly committed under the Lanterman-Petris-Short Act (LPS Act) (Welf. & Inst. Code, § 5000, et seq.) But the Legislature's intention to treat MDOs like persons committed under the LPS Act, rather than like persons found NGI, does not itself demonstrate MDOs are not similarly situated to persons who were found NGI.

In summary, the Attorney General has failed to proffer any persuasive argument as to why persons facing commitment as MDOs are not similarly situated to those persons who, having previously been found NGI, are facing the extension of their commitment past the maximum term of confinement for their crime. We conclude they are similarly situated, and consequently turn to the issue of whether the Legislature's disparate treatment of these two groups – by affording persons found NGI the right not to testify, while denying that same right to MDOs, is justified.

*3.2 The Attorney General's Contention that Disparate Treatment Is Justified*

The Attorney General argues that even assuming persons found to be NGI and those asserted to be MDO are similarly situated, the propriety of offering them disparate treatment should be assessed under the rational basis test, rather than subjected to strict scrutiny. We disagree. The Attorney General's argument is based on the assertion that the relevant interest at stake in this proceeding for purposes of equal protection analysis is the person's right to refuse to testify, a right the Attorney General

10

characterizes as a nonfundamental in the context of a civil proceeding. But the right to refuse to testify is not the interest at stake in the MDO proceeding. Instead, in both a proceeding to civilly commit a defendant as an MDO, and a proceeding to extend the commitment of a person found to be NGI, the interest at stake is the defendant's *liberty* interest. "'[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" (*People v. Allen, supra*, 42 Cal.4th at p. 98.) That liberty interest is a fundamental one. (See *In re Moye* (1978) 22 Cal.3d 457, 465 [explaining that "[b]ecause petitioner's personal liberty is at stake, . . . the applicable standard for measuring the validity of the [NGI] statutory scheme now before us [as distinguished from the MDSO scheme then in effect] requires application of the strict scrutiny standard of equal protection analysis"].)

Under the strict scrutiny standard, "the state must establish both that it has a 'compelling interest' which justifies the challenged procedure and that the distinctions drawn by the procedure are necessary to further that interest." (*In re Moye, supra*, 22 Cal.3d at p. 465; see also *McKee, supra*, 47 Cal.4th at p. 1208 [requiring the prosecutor to establish that disparate treatment "is needed to protect society"].) But having cited the wrong standard, the Attorney General has made no attempt to satisfy the correct one. Consequently, we cannot conclude that has been done.

However, we also note, like the courts in *McKee* and *Curlee*, that the issue of justification for this disparate treatment was not litigated in the trial court. (*McKee, supra,* 47 Cal.4th 1208-1209; *People v. Curlee*, *supra*, 237 Cal.App.4th at p. 722.) Moreover, like those courts, we cannot foreclose the possibility that the prosecutor would be able to demonstrate an appropriate justification if given the opportunity to do so on remand. Consequently, we conclude remand for that purpose is appropriate.

11

*4. The Attorney General's Claim of Harmless Error*

Finally, the Attorney General argues that even if it was a denial of equal protection for the court to compel defendant's testimony, that error was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705]. However, in making that argument, the Attorney General simply asserts there was sufficient evidence to support the judgment, even in the absence of defendant's testimony. That is not the test. In assessing whether an error was harmless beyond a reasonable doubt, "[t]he inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was *surely unattributable to the error*." (*People v Johnwell* (2004) 121 Cal.App.4th 1267, 1278, italics added.) Where, as here, the claimed error was allowing the jury to rely on defendant's own testimony as a basis for evaluating his mental state, that standard is almost impossible to meet. Indeed, it would be difficult to conceive of a jury ignoring the defendant's own testimony in reaching such a verdict. We certainly cannot say that occurred here, and thus we reject the claim of harmless error.

DISPOSITION

The judgment is reversed and the case is remanded to the trial court for an evidentiary hearing to allow the prosecutor an opportunity to justify the differential treatment between persons found NGI and persons facing extended commitment as MDOs when it comes to the right to refuse testimony at a hearing to extend their commitment. In conducting the hearing, the trial court shall apply the standards and rules articulated in *McKee*. If the prosecutor can provide an appropriate justification for treating these similarly situated groups differently, which withstands strict scrutiny, then the trial court shall affirm the judgment extending defendant's commitment as a MDO. If

12

the prosecutor does not carry that burden, the trial court shall conduct a new hearing at which defendant is not required to testify.

RYLAARSDAM, J.

WE CONCUR:

O'LEARY, P. J.

ARONSON, J.