[No. F065957. Fifth Dist. Aug. 27, 2014.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE GRAY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, only the Introduction, Procedural History, part II of the Discussion, and the Disposition are certified for publication.

286

**COUNSEL**

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Louis M. Vasquez, Rebecca L. Whitfield, Leanne Le Mon and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

DETJEN, J.—

## INTRODUCTION

Appellant Lawrence Gray challenges his commitment as a sexually violent predator (SVP). In the published portion of this opinion, we hold that the version of the Sexually Violent Predators Act (SVPA; Welf. & Inst. Code, § 6600 et seq.) under which appellant was committed is constitutional.[1] We decline to address changes to the SVPA that did not go into effect until after the date of appellant's commitment. In the unpublished portion of this opinion, we conclude appellant is not entitled to reversal based on admission of evidence concerning his HIV and hepatitis C status. We affirm the judgment.

## PROCEDURAL HISTORY

Appellant was born in 1966. On August 26, 2005, he pled guilty to assault with intent to commit oral copulation, in the commission of which he used a knife (Pen. Code, §§ 220, 12022, subd. (b)(1)), and assault with a deadly weapon and by means of force likely to produce great bodily injury (*id.*, § 245, subd. (a)(1)), and admitted having served a prior prison term (*id.*, § 667.5, subd. (b)). He was sentenced to five years in prison.

On August 23, 2010, the Tulare County District Attorney filed a petition to commit appellant under the SVPA. On August 22, 2011, the trial court found probable cause to believe appellant was an SVP. On September 19, 2012, following a jury trial, appellant was found to be an SVP. That same day, he was committed to the State Department of State Hospitals (DSH) for an indeterminate term. (§ 6604.)[2]

## FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] DSH was formerly known as the State Department of Mental Health (DMH).

*See footnote, *ante*, page 285.

## DISCUSSION

### I

### ADMISSION OF EVIDENCE CONCERNING APPELLANT'S HIV AND HEPATITIS C STATUS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

### CONSTITUTIONALITY OF SVPA

Appellant contends the version of the SVPA under which he received an indeterminate commitment violates the ex post facto and double jeopardy provisions of the federal and state Constitutions, as well as his rights to due process and equal protection of law. He concedes the California Supreme Court has ruled against him on his due process, ex post facto, and double jeopardy claims. (*People v. McKee* (2010) 47 Cal.4th 1172 [104 Cal.Rptr.3d 427, 223 P.3d 566] (*McKee I*).) We are thus required to reject these assertions. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)[12] He further concedes that upon remand in *McKee I*, the Court of Appeal in *People v. McKee* (2012) 207 Cal.App.4th 1325 [144 Cal.Rptr.3d 308] (*McKee II*) ruled against his position on the equal protection issue. He says, however, that *McKee II* was wrongly decided and so should not be followed.

■ In *McKee I*, the California Supreme Court observed that under the SVPA, as amended by Proposition 83 (The Sexual Predator Punishment and Control Act: Jessica's Law) effective November 8, 2006 (the version under which appellant was committed), SVP's receive indeterminate commitments and, generally speaking, bear the burden of proving they should be released, while mentally disordered offenders (MDO's) are committed for one year and thereafter have the right to be released unless the People prove beyond a reasonable doubt that the person should be recommitted for another year.

---

*See footnote, *ante*, page 285.

[12] In reality, although *McKee I* rejected the due process and ex post facto arguments made by appellant (*McKee I, supra*, 47 Cal.4th at pp. 1193, 1195), the case did not directly address a claim the SVPA violates double jeopardy principles. It did, however, find the SVPA was not punitive. (*McKee I*, at p. 1195; see *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1175 [81 Cal.Rptr.2d 492, 969 P.2d 584].) In light of this determination, we agree with those cases that have rejected double jeopardy contentions. (E.g., *People v. McDonald* (2013) 214 Cal.App.4th 1367, 1383 [154 Cal.Rptr.3d 823]; *People v. Landau* (2013) 214 Cal.App.4th 1, 44–45 [154 Cal.Rptr.3d 1].)

(*McKee I, supra*, 47 Cal.4th at pp. 1186–1187, 1202.) The Supreme Court found that SVP's and MDO's are similarly situated for purposes of determining whether equal protection is violated by the fact one class bears a substantially greater burden in obtaining release from commitment than the other. (*Id.* at p. 1203.) The court stated: "Because MDO's and SVP's have the same interest at stake—the loss of liberty through involuntary civil commitment—it must be the case that when society varies the standard and burden of proof for SVP's in the manner in which Proposition 83 did, it does so because of the belief that the risks involved with erroneously freeing SVP's from their commitment are significantly greater than the risks involved with freeing MDO's. [Citation.] A substantial question is raised about the basis for this belief." (*Id.* at p. 1204, fn. omitted.) The court did not hold, as a matter of law, that there was no justification for the different treatment, but rather remanded the matter to give the People the opportunity to demonstrate a constitutional justification for the disparate treatment of SVP's and MDO's. (*Id.* at pp. 1207–1209.) It emphasized "that different classes of individuals civilly committed need not be treated identically" (*id.* at p. 1210), and that "mere disagreement among experts will not suffice to overturn the Proposition 83 amendments. The trial court must determine whether the legislative distinctions in classes of persons subject to civil commitment are reasonable and factually based—not whether they are incontrovertible or uncontroversial" (*id.* at pp. 1210–1211).

Upon remand, the trial court held a 21-day evidentiary hearing and concluded the People had met their burden of justifying the disparate treatment of SVP's. (*McKee II, supra*, 207 Cal.App.4th at p. 1330.) Division One of the Fourth District Court of Appeal affirmed, concluding "the trial court correctly found the People presented substantial evidence to support a reasonable perception by the electorate that SVP's present a substantially greater danger to society than do MDO's . . . ." (*Id.* at pp. 1330–1331.)

The appellate court set out the strict scrutiny standard applicable, observed that the trial court employed that standard in holding the evidentiary hearing, and noted that the trial court, in its 35-page statement of decision, found the People had met their burden of establishing, by a preponderance of the evidence, that the disparate treatment of SVP's was based on a reasonable perception they posed greater and unique dangers. (*McKee II, supra*, 207 Cal.App.4th at pp. 1332, 1335.) It then explained:

"McKee asserts, and we agree, that we review de novo the trial court's determination whether the [SVPA], as amended by Proposition 83, violates his equal protection rights. We independently determine whether the People presented substantial, factual evidence to support a reasonable perception that SVP's pose a unique and/or greater danger to society than do MDO's . . . ,

thereby justifying the disparate treatment of SVP's under the [SVPA]. Although the trial court heard the testimony of many witnesses and received in evidence many exhibits, the instant constitutional question involved mixed questions of law and fact that are predominantly legal, if not purely legal questions, which are subject to de novo review. [Citations.] Furthermore, because in this case the trial court presumably did not decide any disputed historical facts, but determined only whether the People presented sufficient evidence to support a reasonable perception that SVP's pose a greater danger to society, we are in as good a position as the trial court to make that determination. Therefore, we apply an independent standard in reviewing the trial court's order rejecting McKee's equal protection claim.

"In independently reviewing the evidence admitted at the remand hearing, we must determine whether the People presented substantial evidence to support a reasonable inference or perception that the [SVPA's] disparate treatment of SVP's is necessary to further compelling state interests. [Citations.] . . . '[W]hen a constitutional right, such as the right to liberty from involuntary confinement, is at stake, the usual judicial deference to legislative findings gives way to an exercise of independent judgment on the facts to ascertain whether the legislative body " 'has drawn *reasonable inferences based on substantial evidence.*' " ' (*McKee* [*I, supra*, 47 Cal.4th] at p. 1206, italics added.) For evidence to be 'substantial,' it cannot be just 'any' evidence, but must be of ponderable legal significance, reasonable, credible, and of solid value. [Citation.] Furthermore, our power begins and ends with the determination whether there is substantial evidence, contradicted or uncontradicted, to support the legislative determination, and when two or more inferences can reasonably be deduced from the evidence, we are without power to substitute our deductions for those of the electorate or other legislative body. [Citation.]" (*McKee II, supra,* 207 Cal.App.4th at pp. 1338–1339, fn. omitted.)

The Court of Appeal found the People had presented evidence (1) "showing the inherent nature of the SVP's mental disorder makes recidivism significantly more likely for SVP's as a class than for MDO's" (*McKee II, supra,* 207 Cal.App.4th at p. 1340); (2) "that the victims of sex offenses suffer unique and, in general, greater trauma than victims of nonsex offenses" (*id.* at p. 1342); and (3) "showing SVP's are significantly different from MDO's . . . diagnostically and in treatment" (*id.* at p. 1344).

■ The appellate court also rejected the defendant's argument the SVPA was unconstitutional unless it adopted the least restrictive means available to further the state's compelling interests. (*McKee II, supra,* 207 Cal.App.4th at pp. 1348–1349.) The court reviewed the pertinent authorities—including *McKee I*—and concluded: "[I]n strict scrutiny cases, the government must

show both a compelling state interest justifying the disparate treatment *and* that the disparate treatment is necessary to further that compelling state interest. [Citations.] We are unpersuaded the electorate that passed Proposition 83 in 2006 was required to adopt the least restrictive means available (e.g., a two-year or other determinate term of civil commitment) in disparately treating SVP's and furthering the compelling state interests of public safety and humane treatment of the mentally disordered." (*McKee II*, at p. 1349.)

The California Supreme Court denied review of *McKee II* on October 10, 2012 (S204503).

Appellant now says *McKee II* was wrongly decided because (1) the *McKee II* court only addressed the problem arising out of the indeterminate commitment and did not address the equal protection issues arising out of the shifting of the burden of proof in section 6608 petitions, as well as the lack of a right to a jury trial in such proceedings; (2) the *McKee II* court failed to properly apply strict scrutiny in its analysis; (3) the *McKee II* court's factual analysis was "badly flawed"; and (4) the *McKee II* court never explained how disparate treatment was necessary to serve the compelling governmental interests of protecting society and providing treatment to mentally ill sex offenders. Appellant urges us to conduct our own analysis of the law, and either rule the SVPA violated appellant's equal protection rights or remand the matter for an evidentiary hearing on the issue.

█ Every published opinion to consider the issue has concluded the applicable version of the SVPA passes constitutional muster under the strict scrutiny test, and has found *McKee II* persuasive. (*People v. Kisling* (2014) 223 Cal.App.4th 544, 547–548 [167 Cal.Rptr.3d 339] [Third Dist.];[13] *People v. McDonald, supra,* 214 Cal.App.4th at pp. 1371, 1376–1382 [Fourth Dist., Div. Three];[14] *People v. Landau, supra,* 214 Cal.App.4th at pp. 47–48 [Fourth Dist., Div. Three]; *People v. McCloud* (2013) 213 Cal.App.4th 1076, 1078–1079, 1085–1086 [153 Cal.Rptr.3d 10] [First Dist., Div. Two]; *People v. McKnight* (2012) 212 Cal.App.4th 860, 862–864 [151 Cal.Rptr.3d 132] [First Dist., Div. Three].) We agree with these opinions. We recognize we are not

[13] *Kisling* expressly found that to not follow *McKee II* would be contrary to the California Supreme Court's "clear intent" in remanding *McKee I* to the trial court for an evidentiary hearing. (*People v. Kisling, supra,* 223 Cal.App.4th at p. 548.)

[14] *McDonald* expressly found the equal protection challenge was to be resolved on a classwide basis, rather than affording each potential SVP the right to present his or her own evidence on the matter. (*People v. McDonald, supra,* 214 Cal.App.4th at pp. 1377–1378.) The court further rejected the arguments that the Court of Appeal in *McKee II* failed to conduct the required de novo review (*People v. McDonald,* at pp. 1378–1379), did not apply a true strict scrutiny standard (*id.* at pp. 1379–1380), and incorrectly assessed the evidence (*id.* at pp. 1380–1382).

bound to follow *McKee II*.[15] Nevertheless, we reject appellant's claim his federal and state equal protection rights were violated by the version of the SVPA pursuant to which he was committed.

Appellant seeks to have us consider recent amendments to the SVPA, which, he claims, cause the law now to violate his due process rights under *McKee I*'s analysis, and require that we either reverse his indeterminate commitment or find the amendments unconstitutional.[16] We decline to do so. We are concerned with the constitutionality of the SVPA as it existed when appellant was adjudged an SVP, not the statutory scheme as it may or may not be applied to appellant in the future. (Cf. *People v. Carroll* (2007) 158 Cal.App.4th 503, 508, fn. 2 [69 Cal.Rptr.3d 816].)[17]

## DISPOSITION

The judgment (order of commitment) is affirmed.

Gomes, Acting P. J., and Kane, J., concurred.

Appelant's petition for review by the Supreme Court was denied November 12, 2014, S221708.

---

[15] In arguing this point in his opening brief, appellate counsel notes a conclusion reached by this court in an unpublished opinion. It is improper to cite or rely upon unpublished opinions except in limited circumstances not present here. (Cal. Rules of Court, rule 8.1115(a) & (b).)

[16] Senate Bill No. 295 (2013–2014 Reg. Sess.) added section 6604.9 and amended sections 6605 and 6608, all of which concern conditional release and/or unconditional discharge.

[17] We are not persuaded by appellant's argument the issue is ripe for review because of the reliance placed by *McKee I* on the availability of relief under section 6608 as it then stood. The fact remains appellant was adjudged an SVP before Senate Bill No. 295's (2013–2014 Reg. Sess.) amendments took effect. Those amendments may or may not be applied to appellant in the future.