Filed 12/22/15  P. v. Rains CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JONATHAN RAINS,<br><br>    Defendant and Appellant. | F067673<br><br>(Super. Ct. No. 04CRSP677246)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  James Petrucelli, Judge.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Julie A. Hokans, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

BACKGROUND

On October 28, 1977, appellant Jonathan Rains was convicted of committing a lewd or lascivious act on and participating in oral copulation with a child under the age of 14 (Pen. Code, §§ 288, 288a), for which he received an indeterminate sentence.  On August 5, 1983, he was convicted on two counts of participating in oral copulation with a child under the age of 14 (*id.*, § 288a), for which he received a determinate sentence.

On May 27, 1997, appellant was committed to the custody of the Department of Mental Health (DMH) pursuant to the Sexually Violent Predators Act (SVPA), codified at Welfare and Institutions Code section 6600 et seq.[1]  Between 1999 and 2005, the district attorney petitioned to extend his commitment as a sexually violent predator (SVP) four times.[2]

On November 7, 2006, California voters approved Proposition 83, also known as "The Sexual Predator Punishment and Control Act: Jessica's Law," which amended the SVPA.  (*People v. McKee* (2010) 47 Cal.4th 1172, 1186 (*McKee I*).)  Pursuant to Proposition 83, "an individual SVP's commitment term is indeterminate, rather than for a two-year term as in the previous version of the [SVPA]."  (*McKee I*, *supra*, at p. 1187.)  Furthermore, an SVP can only be released conditionally or unconditionally if (1) "the DMH authorizes a petition for release and the state does not oppose it or fails to prove beyond a reasonable doubt that the individual still meets the definition of an SVP" (*ibid.*);

---

[1]     Unless otherwise indicated, subsequent statutory citations refer to the Welfare and Institutions Code.

[2]     As originally enacted in 1995, section 6604 of the SVPA provided:

"If the court or jury determines that the person is a[n] [SVP], the person shall be committed for two years … and the person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a new petition for commitment …."  (Stats. 1995, ch. 763, § 3.)

or (2) "the individual, petitioning the court on his own, is able to bear the burden of proving by a preponderance of the evidence that he is no longer an SVP" (*ibid.*).[3]

On April 11, 2007, the district attorney petitioned to commit appellant for an indeterminate term. On July 15, 2013, a commitment trial commenced. On July 16, 2013, the prosecution called appellant to the stand to testify. No objection was raised. On July 19, 2013, the jury found he was an SVP and the superior court committed him to the custody of the Department of State Hospitals (DSH).[4]

## ISSUES

Appellant presents four contentions on appeal. First, as amended by Proposition 83, the SVPA violated his right to equal protection under the law.[5] Second, as amended by Proposition 83, the SVPA violated the due process, ex post facto, and double jeopardy provisions of the California and United States Constitutions. Third, recent amendments to the SVPA enacted in 2013 rendered the statute unconstitutional. Finally, the superior court deprived appellant of his right to equal protection by allowing the prosecution to call him as a witness at the commitment trial.

---

[3]   In *McKee I*, the Supreme Court observed "the method of petitioning the court for release and proving fitness to be released, which under the former [SVPA] had been the way an SVP could cut short his two-year commitment, now becomes the only means of being released from an indefinite commitment when the DMH does not support release." (*McKee I*, *supra*, 47 Cal.4th at pp. 1187-1188.)

[4]   The DMH was later renamed the DSH. (§ 4000, as amended by Stats. 2012, ch. 24, § 63.)

[5]   "The constitutional guaranty of equal protection of the laws has been judicially defined to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty[,] and property and in their pursuit of happiness." (*People v. Romo* (1975) 14 Cal.3d 189, 196.)

DISCUSSION

**I.  The SVPA, as amended by Proposition 83, did not violate appellant's right to equal protection under the law.**

In *McKee I*, the California Supreme Court considered, inter alia, an equal protection challenge to the SVPA in the wake of Proposition 83.  (See *McKee I*, *supra*, 47 Cal.4th at pp. 1184, 1196-1211.)  It recognized an SVP is committed indefinitely and generally bears the burden of proving his or her fitness to be released under the foregoing statute.  (*Id.* at pp. 1187-1188, 1202.)  By contrast, pursuant to the Mentally Disordered Offender Act (MDOA), codified at Penal Code section 2960 et seq., a mentally disordered offender (MDO) is committed for a one-year period and thereafter has the right to be released unless the state proves beyond a reasonable doubt he or she should be recommitted for another year.  (*McKee I*, *supra*, at pp. 1200-1202.)  Given both SVP's and MDO's (1) suffer from mental disorders rendering them dangerous to others, (2) have been convicted of serious or violent felonies, and (3) have been civilly committed to the DMH for treatment of their disorders following the end of their prison terms, the Supreme Court concluded the groups are similarly situated.  (*Id.* at p. 1203.)  As a result, the state must justify why the terms of civil commitment are "substantially less favorable for [SVP's] than [MDO's.]"  (*Ibid.*)  The high court detailed:

> "[I]mposing on one group an indefinite commitment and the burden of proving they should not be committed, when the other group is subject to short-term commitment renewable only if the People prove periodically that continuing commitment is justified beyond a reasonable doubt, raises a substantial equal protection question that calls for some justification by the People.… [S]tandards and burdens of proof represent societal determinations of who should bear the risk that a court's or jury's judgment will be in error.  [Citation.]  Standards and burdens of proof, like other due process protections afforded both criminal defendants and persons subject to involuntary commitment, also balance the individual's fundamental liberty interest in not being incarcerated or involuntarily confined with the state's compelling interest in protecting society from dangerous persons, in punishing criminal behavior in the case of criminal defendants, and in treating mental illness in the case of civil committees.  Because MDO's and

4.

SVP's have the same interest at stake—the loss of liberty through involuntary civil commitment—it must be the case that when society varies the standard and burden of proof for SVP's in the manner in which Proposition 83 did, it does so because of the belief that the risks involved with erroneously freeing SVP's from their commitment are significantly greater than the risks involved with freeing MDO's. [Citation.] A substantial question is raised about the basis for this belief." (*McKee I*, *supra*, 47 Cal.4th at pp. 1203-1204, fn. omitted.)

The high court also concluded SVP's and persons adjudged not guilty by reason of insanity (NGI's) are similarly situated. (*McKee I*, *supra*, 47 Cal.4th at p. 1207.) Like SVP's, NGI's suffer from severe mental disorders, have committed criminal acts, and have been civilly committed for treatment. (*Ibid.*) However, pursuant to Penal Code section 1026.5, NGI's "may not be in civil custody longer than the maximum state prison term to which they could have been sentenced for the underlying offense … unless at the end of that period the district attorney extends the commitment for two years by proving in a jury trial beyond a reasonable doubt that the person presents a substantial danger of physical harm to others because of a mental disease, defect, or disorder." (*McKee I*, *supra*, at p. 1207, citations omitted.) "[A]s with MDO's, the People have not yet carried their burden of justifying the differences between the SVP and NGI commitment statutes." (*Ibid.*)

The Supreme Court did not decide whether the state had failed to justify the disparate treatment of SVP's. Instead, it remanded the matter to the superior court to afford the state the opportunity to make the appropriate showing. (*McKee I*, *supra*, 47 Cal.4th at pp. 1207-1209.) In doing so, the high court stressed "different classes of individuals civilly committed need not be treated identically" (*id.* at p. 1210), "mere disagreement among experts will not suffice to overturn the Proposition 83 amendments" (*ibid.*), and "[t]he trial court must determine whether the legislative distinctions in classes

of persons subject to civil commitment are reasonable and factually based—not whether they are incontrovertible or uncontroversial" (*id.* at pp. 1210-1211).[6]

---

[6]      In *McKee I*, the Supreme Court relied heavily on *In re Moye* (1978) 22 Cal.3d 457 (*Moye*). (See *McKee I*, *supra*, 47 Cal.4th at pp. 1184, 1196-1199, 1204, 1207-1209.) In *Moye*, the question was whether NGI's who had been committed for the maximum term provided for the underlying offense may be held in excess of that term under a statutory scheme requiring them to prove by a preponderance of the evidence they were no longer a danger to the health and safety of themselves or others. (See *Moye*, *supra*, at pp. 460, 462-463.) The high court concluded NGI's "have been unfairly selected and required to face indefinite confinement until they can establish their own fitness for release." (*Id.* at p. 463.) It reasoned:

> "Perhaps the most glaring example of inequality appears when we examine the treatment afforded mentally disordered sex offenders (MDSO[']s). MDSO[']s comprise a class of individuals quite similar to … [NGI's]. Both classes … involve persons who initially have been found to have committed a criminal act, but whose mental condition warrants a period of confinement for treatment in a state institution, in lieu of criminal punishment.... [¶] … [¶]

> "… [T]he preconditions to both commitments are similar: the initial commitment follows commission of a criminal act and is based upon a finding of a mental disorder which might present a danger to others. The MDSO can be confined for only a limited period, measured by the maximum term for the underlying offense, unless thereafter the *People* (or other committing authority) can establish grounds for an extended commitment. In contrast, [NGI's] face indefinite, lifetime confinement unless *they* can prove that their sanity has been restored. [¶] … [¶]

> "Because [an NGI]'s personal liberty is at stake, … the applicable standard for measuring the validity of the statutory scheme now before us requires application of the strict scrutiny standard of equal protection analysis. Accordingly, the state must establish both that it has a 'compelling interest' which justifies the challenged procedure and that the distinctions drawn by the procedure are necessary to further that interest. [Citation.] At the very least, persons similarly situated must receive like treatment under the law. [Citation.] As we have noted, by reason of their commission of a prior criminal act and the finding of a mental disorder justifying the initial commitment, persons committed as MDSO[']s are 'similarly situated' with [NGI's]." (*Moye*, *supra*, 22 Cal.3d at pp. 463-466; see *McKee I*, *supra*, 47 Cal.4th at p. 1196 [former Mentally Disordered Sex Offender Act is the forerunner of the SVPA].)

6.

Upon remand, the superior court held a 21-day evidentiary hearing and found the state met its burden of justifying disparate treatment of SVP's. (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1330 (*McKee II*).) On appeal, Division One of the Fourth District Court of Appeal applied the strict scrutiny standard, which had been used by the superior court (*id.* at pp. 1332, 1335), reviewed the superior court's determination de novo (*id.* at pp. 1338-1339), and "conclude[d] the trial court correctly found the People presented substantial evidence to support a reasonable perception by the electorate that SVP's present a substantially greater danger to society than do MDO's or NGI's, and therefore the disparate treatment of SVP's … is necessary to further the People's compelling interests of public safety and humane treatment of the mentally disordered" (*id.* at pp. 1330-1331). Specifically, the appellate court deemed significant the evidence demonstrating "the inherent nature of the SVP's mental disorder makes recidivism significantly more likely for SVP's as a class than for MDO's and NGI's" (*id.* at p. 1340), "victims of sex offenses suffer unique and, in general, greater trauma than victims of nonsex offenses" (*id.* at p. 1342), and "SVP's are significantly different from MDO's and NGI's diagnostically and in treatment" (*id.* at p. 1344). (Accord, *id.* at p. 1347.)

The Supreme Court denied review of *McKee II* on October 10, 2012 (S204503). Subsequent appellate court opinions have followed *McKee II*. (*People v. Kisling* (2014) 223 Cal.App.4th 544, 547-548 [Third Dist.]; *People v. McDonald* (2013) 214 Cal.App.4th 1367, 1371, 1376-1382 [Fourth Dist., Div. Three]; *People v. Landau* (2013) 214 Cal.App.4th 1, 47-48 [Fourth Dist., Div. Three]; *People v. McCloud* (2013) 213 Cal.App.4th 1076, 1078-1079, 1085-1086 [First Dist., Div. Two]; *People v. McKnight* (2012) 212 Cal.App.4th 860, 862-864 [First Dist., Div. Three].) We agreed with these opinions in an earlier case. (*People v. Gray* (2014) 229 Cal.App.4th 285, 291 (*Gray*).)

Nonetheless, appellant argues the Proposition 83 version of the SVPA violated his right to equal protection under the law. We reject this claim. Though we are not bound

by the opinions of other appellate districts, we ordinarily follow them absent good cause to disagree so as to advance stability and predictability in the law.  (*People v. Kim* (2011) 193 Cal.App.4th 836, 847.)  Here, as before (*Gray*, *supra*, 229 Cal.App.4th at pp. 291-292), we find no reason to deviate from *McKee II*'s holding.  Moreover, to disregard *McKee II* would undermine "the Supreme Court['s] inten[t] for the remanded proceedings … to be, as a matter of law, dispositive in all cases on the issue of whether the disparate treatment between SVP's and MDO's/NGI's was justifiable …."  (*People v. Kisling*, *supra*, 223 Cal.App.4th at p. 548.)

**II.    The SVPA, as amended by Proposition 83, did not violate the due process, ex post facto, and double jeopardy provisions of the California and United States Constitutions.**

Appellant contends the indeterminate commitment term added to the SVPA by Proposition 83 violated the due process, ex post facto, and double jeopardy provisions of the California and United States Constitutions.  He concedes, however, the Supreme Court rejected these arguments in *McKee I*.  (See *McKee I*, *supra*, 47 Cal.4th at pp. 1184, 1188-1195; see also *Gray*, *supra*, 229 Cal.App.4th at p. 288, fn. 12.)  We are bound by the doctrine of stare decisis to follow *McKee I*.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

**III.   Appellant's claim the 2013 amendments to the SVPA rendered the statute unconstitutional is not justiciable.**

Next, appellant asserts recent amendments to the SVPA "cause the [SVPA] now to violate [his] due process rights under the analysis of the California Supreme Court in *McKee I*."  (Some capitalization omitted.)  Enacted August 27, 2013, and effective January 1, 2014, these amendments added section 6604.9 and revised sections 6605 and 6608, all of which relate to conditional release and/or unconditional release.  (Stats. 2013, ch. 182, §§ 1-3.)

"We are concerned with the constitutionality of the SVPA as it existed when appellant was adjudged an SVP, not the statutory scheme as it may or may not be applied to appellant in the future." (*Gray*, *supra*, 229 Cal.App.4th at p. 292; see *Younger v. Superior Court* (1978) 21 Cal.3d 102, 119 ["'The rendering of advisory opinions falls within neither the functions nor the jurisdiction of this court.'"].) Thus, we decline to address this issue since it pertains to changes to the SVPA that did not go into effect until well after the date of appellant's commitment.[7]

## IV.  The issue of whether SVP's are entitled to a right not to testify at commitment proceedings on the grounds of equal protection shall be determined by the superior court on remand.

For the first time on appeal, appellant contends the superior court deprived him of his right to equal protection under the law by allowing the prosecution to call him as a trial witness. His argument rests on two propositions. First, in view of *Hudec v. Superior Court* (2015) 60 Cal.4th 815 (*Hudec*), NGI's are statutorily exempted from testifying against themselves in commitment proceedings. Second, SVP's are similarly situated to NGI's and therefore entitled to the same privilege.

At the outset, the Attorney General claims appellant forfeited the issue by failing to object below. We exercise our discretion to consider the matter. At the time of appellant's commitment, case law held the Fifth Amendment's guarantee against compulsory self-incrimination did not apply in SVPA proceedings. (*People v. Allen* (2008) 44 Cal.4th 843, 860, citing *Allen v. Illinois* (1986) 478 U.S. 364, 375; *People v. Leonard* (2000) 78 Cal.App.4th 776.) Also, with respect to appellant's foregoing argument, authority was still split on the issue of whether NGI's could invoke a statutory

---

[7]  Appellant insists this issue is ripe for review because of the reliance placed by *McKee I* on the availability of relief under then-section 6608. We are not swayed. The fact remains appellant had been adjudged an SVP before the 2013 amendments took effect and these amendments may or may not be applied to him in the future. (*Gray*, *supra*, 229 Cal.App.4th at p. 292, fn. 17.)

9.

guarantee against self-incrimination. (Compare *People v. Haynie* (2004) 116 Cal.App.4th 1224, 1225-1226 [plain language of Pen. Code, § 1026.5, subd. (b)(7), bars prosecution from questioning NGI's at commitment proceedings] with *People v. Lopez* (2006) 137 Cal.App.4th 1099, 1116 [Pen. Code, § 1026.5, subd. (b)(7), did not intend to afford committees the right not to testify].) A unanimous Supreme Court only recently resolved this conflict in *Hudec*, holding NGI's indeed have a statutory right not to testify at commitment proceedings. (*Hudec*, *supra*, 60 Cal.4th at p. 818, 826-832; see *id.* at p. 832, fn. 5 [expressly disapproving *People v. Lopez*, *supra*].) Given these circumstances, "it is not unreasonable to assume that an objection would have been futile and to apply the rule that a party is not required to make fruitless objections." (*People v. Curlee* (2015) 237 Cal.App.4th 709, 715 (*Curlee*).) Furthermore, "although California authorities on the point are not uniform, our courts have several times examined constitutional issues raised for the first time on appeal, especially when the enforcement of a penal statute is involved [citation], the asserted error fundamentally affects the validity of the judgment [citation], or important issues of public policy are at issue [citation]." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394.)

In evaluating the merits of appellant's equal protection challenge, we must determine (1) whether SVP's are similarly situated to NGI's for the purpose of the right not to testify at commitment proceedings; and (2) if so, whether the state has met its burden of justifying the disparate treatment of SVP's. (See *McKee I*, *supra*, 47 Cal.4th at p. 1202.) On the first point, we rely on the Supreme Court's rationale set forth in *McKee I* (see *ante*, at pp. 4-8) and *Moye* (see *ante*, fn. 6) and find the groups are similarly situated: both suffer from severe mental disorders, have committed criminal acts, and have been committed to the state hospital for treatment.[8] On the second point, based on

---

[8]     The Attorney General contends SVP's and NGI's are not similarly situated because a state hospital acquires custody of NGI's "at the time [they are] found not guilty by reason of insanity," treats NGI's "for the maximum period for which [they] could

10.

the record before us, the state has not justified its differential treatment of SVP's and NGI's vis-à-vis the right not to testify.[9] We emphasize, however, we do not conclude this burden cannot be met. Following in the footsteps of our high court in *McKee I*, we believe the proper remedy is to remand the matter to the superior court to afford the state the opportunity to make the appropriate showing.[10]

have been imprisoned if found guilty," and "necessarily has a wealth of information on [NGI's] and is in a good position to assess whether [NGI's] need[] continued treatment." We are unable to verify this assertion based on the record before us. (See *Curlee*, *supra*, 237 Cal.App.4th at pp. 720-721.)

Alternatively, the Attorney General points out the United States Supreme Court has approved different standards of proof for SVP's and NGI's in *Jones v. United States* (1983) 463 U.S. 354. "This argument is unavailing. In *Jones*, the court allowed a lower standard of proof for NGI's—that is, *less favorable* treatment—because they had already advanced their insanity as a defense and proved their criminal acts were a result of their mental illness. [Citation.] *Jones* provides no justification for *more favorable* treatment of NGI's than of other civil committees." (*Curlee*, *supra*, 237 Cal.App.4th at p. 721, fn. 6.)

[9] The Attorney General cites *McKee II* to support the disparate treatment of SVP's. (See *ante*, at p. 7.) While the Supreme Court in *McKee II* did conclude the state met its burden of justifying why SVP's are subject to indeterminate commitments due to their higher likelihood of recidivism, their victims' unique and greater trauma, and their diagnostic and treatment differences, we are not convinced these distinctions necessarily demonstrate the need for compelled testimonies from SVP's but not NGI's. (*Curlee*, *supra*, 237 Cal.App.4th at pp. 721-722.)

[10] The Attorney General suggests any error in compelling appellant to testify at his commitment trial was harmless. We disagree. As we previously discussed in an earlier case:

> "The right to not be compelled to testify against oneself is clearly and relevantly implicated when a person is called by the state to testify in a proceeding to []commit him or her even if what is said on the witness stand is not per se incriminating. By calling the person in its case-in-chief, the state is essentially saying that his or her testimony is necessary for the state to prove its case. We have no doubt that a committee so compelled to testify is prejudiced under these circumstances. The California Supreme Court noted in *Cramer v. Tyars* (1979) 23 Cal.3d 131 that permitting the jury to observe the person sought to be committed and to hear him speak and respond provided 'the most reliable proof and probative indicator of the

### DISPOSITION

The matter is remanded to the trial court for further proceedings.

On remand, the trial court is directed to conduct an evidentiary hearing, during which the People will have the opportunity to justify why SVP's—but not NGI's—must be compelled to testify at commitment proceedings.  If the trial court finds the People have carried this burden, it shall confirm its order committing appellant as an SVP.  If the trial court finds otherwise, a new commitment trial shall be conducted pursuant to the SVPA to determine whether appellant is an SVP.

In all other respects, the judgment is affirmed.

_____
DETJEN, J.

WE CONCUR:


_____
HILL, P.J.


_____
GOMES, J.

---

person's present mental condition.'  [Citation.]  As such, we cannot conclude that compelling [an SVP] to testify, even if his testimony was in some regards cumulative to that of other witnesses, was harmless error." (*People v. Haynie*, *supra*, 116 Cal.App.4th at p. 1230.)