Filed 6/26/26  P. v. Taylor CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br><br>v.<br><br>A'DRE EUGENE TAYLOR,<br>        Defendant and Appellant. | C103060<br><br>(Super. Ct. No. 23FE021274) |

Defendant A'Dre Eugene Taylor appeals the trial court's denial of his application for pretrial mental health diversion under Penal Code, section 1001.36.[1]  Defendant contends the court's finding that the People overcame the statutory presumption that his mental health diagnosis was a significant factor in the commission of the offenses was not supported by substantial evidence.  Therefore, its denial of his application on that basis was an abuse of discretion.  We agree.  As a result, we conditionally reverse the judgment and remand with instructions for the trial court to find defendant eligible for diversion and hold a hearing to determine defendant's suitability for diversion.  If the court determines defendant is suitable for diversion, it may grant his application.  If the court determines defendant is not suitable, defendant's convictions and sentence shall be reinstated.

---

[1]        Undesignated statutory references are to the Penal Code.

# BACKGROUND

Between April 29, 2023, and May 2, 2023, the Sacramento Police Department received reports of four robberies committed by a group of what were believed to be minors. Three of the victims were robbed near ATM machines and the fourth while sitting in his car. In two of the robberies the suspects used pepper spray to subdue the victims. In another one, the suspect who robbed the victim brandished a knife. Based on their investigation, police identified defendant, an unhoused 19 year old, as one of the suspects.

The People charged defendant with four counts of second degree robbery. (§ 211.) The complaint alleged that defendant suffered a prior conviction for robbery, which was a serious and violent felony. (§§ 1192.7, subd. (c), 667, subds. (b)–(i), 1170.12.) The complaint also alleged defendant was ineligible for imprisonment in county jail because of a prior or current serious or violent felony conviction (§§ 1170, subd. (h)(3), 667.5(c), 1192.7(c)) or because he is required to register as a sex offender.

Defendant applied for pretrial mental health diversion. (§§ 1001.35, 1001.36.) His application included a report of a mental health evaluation conducted by a mental health counselor on July 9, 2024. Defendant was diagnosed with posttraumatic stress disorder (PTSD), major depressive disorder with psychotic features, and alcohol use disorder.

The People opposed defendant's application, arguing that defendant was ineligible for diversion because clear and convincing evidence demonstrated that his mental health disorder was not a significant factor in the commission of the robberies. And even if defendant was eligible, they argued he was not suitable for diversion because he posed an unreasonable risk of danger to the public.

At the hearing on defendant's application, defense counsel noted that instability had been a constant in defendant's life. He went into foster care at age six, where he experienced "much abuse at the hands of those protectors in foster care." He did not

receive consistent mental health treatment and began experiencing hallucinations at age 11.

Defense counsel also pointed out that defendant was "unable to care for himself in any significant way" and could not live independently. His "intellectual disability, his need for Special Ed all through school make him incapable of being the leader in any of these things. He is so compromised that the only way he can survive is to follow along and go along with the people who plan and execute these robberies."

The People restated their objection to diversion based on a lack of nexus and dangerousness. The People noted that defendant was "quite capable of committing robberies." They argued that "[i]t is simply impossible to believe that PTSD or depression caused [defendant] and his cohorts to disguise themselves with masks over their faces, arm themselves with knives or pepper spray, plan these robberies at the ATMs where they know people will be getting cash and in somewhat a vulnerable position, and then take that money from them. They are obviously coordinated and planned out." The People also argued that defendant's "criminality and dangerousness is escalating" which should also lead the court to find that he "poses an unreasonable risk of danger as well." The record before the court indicated that defendant admitted to three section 288 violations when he was a minor.

The trial court denied diversion finding defendant to be ineligible. Before doing so, the court found that the record would *not* support a finding that defendant posed an unreasonable risk of danger "as defined within the statute." The court then determined that defendant was ineligible for diversion because "clear and convincing evidence" rebutted "the presumption as to the nexus between the underlying diagnoses and the commission of these four robberies in concert with other individuals and having been on probation for the same conduct." The court further explained that evidence defendant committed the robberies "in concert with other individuals" and was on probation "clearly shows there was a plan in place … to target ATM machines …. I don't need to

3

find him to be the thought leader or the planner of all of this to still find that he knew fully what he was doing. And it was not operating under the influence of mental illness or other diagnoses. That's not what was happening here."

After the trial court denied defendant diversion, defendant pled no contest to three counts of robbery and admitted the special allegation. The court sentenced defendant to an aggregate term of 10 years in prison. It imposed the mandatory minimum fines and fees and ordered restitution for two of the victims.

Defendant obtained a certificate of probable cause and filed a timely notice of appeal.

## DISCUSSION

Defendant contends that the trial court abused its discretion when it denied his application for mental health diversion because substantial evidence did not support its finding that the People provided clear and convincing evidence to rebut the statutory presumption that defendant's mental disorder was a significant factor in his commission of the offenses. The People now concede the court's finding that defendant's mental disorder was not a significant factor in the commission of the offense is not supported by substantial evidence. However, they ask us to uphold the trial court's order denying defendant's application because, contrary to the court's contrary finding, "overwhelming evidence" established that defendant poses an unreasonable risk of danger to public safety.

### I. Standard of Review and Legal Principles

We review a trial court's ruling on an application for mental health diversion for an abuse of discretion and its factual findings for substantial evidence. (*Lacour v. Superior Court* (2025) 110 Cal.App.5th 391, 401 (*Lacour*).) A court abuses its discretion when it applies the wrong legal standard or bases its decision on findings that are not supported by substantial evidence. (*People v. Moine* (2021) 62 Cal.App.5th 440, 449

4

(*Moine*).) "By definition, 'substantial evidence' requires evidence and not mere speculation." (*People v. Ramon* (2009) 175 Cal.App.4th 843, 851.)

In reviewing a trial court's finding that a fact has been proven by clear and convincing evidence, the question before us is whether the record "contains substantial evidence from which a reasonable fact finder could have found it highly probable that the [disputed] fact was true." (*Lacour, supra*, 110 Cal.App.5th at p. 401.) To answer that question, we review the record in the light most favorable to the prevailing party and "give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id*. at p. 402.)

The Legislature enacted sections 1001.35 and 1001.36 to authorize trial courts to grant pretrial mental health diversion to defendants "diagnosed with qualifying mental disorders." (*Gomez v. Superior Court* (2025) 113 Cal.App.5th 671, 677 (*Gomez*).) To be eligible for mental health diversion, a defendant must meet two requirements. (*Lacour, supra*, 110 Cal.App.5th at p. 400.) First, the defendant must have been diagnosed within the past five years with a mental disorder identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders. (*Ibid*.; § 1001.36, subd. (b)(1).) Second, the defendant's mental disorder must be a significant factor in the commission of the offense. (*Lacour*, at p. 400; § 1001.36, subd. (b)(2).)

To ensure that diversion applies as broadly as possible, the Legislature amended section 1001.36 to include a presumption that a defendant's mental disorder diagnosis was a significant factor in the commission of the offense if the diagnosis occurred within the past five years. (*Siam v. Superior Court* (2026) 118 Cal.App.5th 67, 80; § 1001.36, subd. (b)(2).) Once the presumption is established, to overcome it, the People must prove by clear and convincing evidence that defendant's mental disorder was not a motivating, causal, or contributing factor in defendant's commission of the offense. (§ 1001.36, subd. (b)(2); *Gomez, supra*, 113 Cal.App.5th at p. 688.)

5

Even if a defendant meets the eligibility requirements, before the court can grant a defendant diversion, the court must also find the defendant suitable for diversion using the four criteria outlined in section 1001.36, subdivision (c).  Specifically, the court must find that (1) a qualified mental health expert has determined the defendant's symptoms would respond to mental health treatment; (2) the defendant has consented to diversion and waived the right to a speedy trial; (3) the defendant has agreed to comply with treatment as a condition of diversion, and (4) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community.  (§ 1001.36, subd. (c); *Lacour*, *supra*, 110 Cal.App.5th at pp. 400-401.)

Even after finding a defendant eligible and suitable for diversion, however, a trial court may exercise its "residual discretion" to deny diversion.  (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 896.)  "But this 'residual' discretion must be exercised ' "consistent with the principles and purpose of the governing law." ' [Citations.]  That purpose includes a strong legislative preference for treatment of mental health disorders because of the benefits of such treatment to both the offending individual and the community."  (*Gomez*, *supra*, 113 Cal.App.5th at p. 679, quoting *Sarmiento,* at pp. 892-893.)

## II.   *Analysis*

### A.  Nexus

In 2024, a mental health professional diagnosed defendant with "PTSD, major depressive disorder with psychotic features," and "alcohol use disorder."  Defendant's diagnosis established a presumption that his mental health disorder was a significant factor in the commission of the robberies.  (*Gomez*, *supra*, 113 Cal.App.5th at p. 678; § 1001.36, subd. (b)(2).)  At the hearing, defense counsel also referenced information in the evaluation indicating defendant's mental disorders made "him incapable of being the leader."  She explained that "[h]e is so compromised that the only way he can survive is to follow along and go along with the people who plan and execute these robberies."

6

In response, the People argued that "it [was] simply impossible to believe that PTSD or depression caused [defendant] and his cohorts" to plan the robberies, which were "obviously coordinated and planned out." The People offered no evidence, and the trial court did not identify any, establishing by clear and convincing evidence, that defendant's mental disorder was not a motivating, causal, or contributing factor to defendant's commission of the offenses. (*Gomez, supra,* 113 Cal.App.5th at p 688.) Their speculation about the cause of the robberies is not substantial evidence. (*People v. Ramon, supra,* 175 Cal.App.4th at p 851.)

Despite the lack of evidence, the court found that the presumption was rebutted. The court stated that it did not have to find that defendant was the "thought leader" to conclude that "he knew fully what he was doing" and that he "was not operating under the influence of mental illness or other diagnoses."

To be sure, the trial court was not required to determine that defendant was a "thought leader" or planner to find that the presumption was overcome by clear and convincing evidence. But it was required to identify clear and convincing evidence that established defendant's mental health disorder was not a motivating, causal, or contributing factor in defendant's participation in the robberies with the individuals who may have been the "thought leaders" in planning the robberies. (*Lacour*, s*upra*, 110 Cal.App.5th at pp. 403-404.) Beyond speculating that defendant was not operating under the influence of his mental illness or other diagnoses, the court did not identify any such evidence.

As we have held, "the absence of evidence proving that [defendant's] mental disorder *was* a factor in the commission of the [robberies] is not substantial evidence supporting a finding by clear and convincing evidence that [defendant's] mental disorder *was not* a factor in the commission of the offenses." (*Gomez, supra,* 113 Cal.App.5th at p. 688, quoting *Lacour*, s*upra*, 110 Cal.App.5th at p. 404.) By finding the presumption was overcome even though the People offered no evidence that would establish that

7

defendant's mental disorder was not a motivating, causal, or contributing factor to defendant's commission of the offenses, the trial court "effectively shifted the burden to [defendant] to affirmatively prove that his mental disorder contributed to the offenses." (*Lacour*, *supra*, 110 Cal.App.5th at p. 404.)  That is not the showing the statute requires. (§ 1001.36, subd. (b)(2).)

For these reasons, we accept the People's concession that the trial court's finding that clear and convincing evidence rebutted the statutory presumption is not supported by substantial evidence.  " 'A court abuses its discretion when it . . .  bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*Siam v. Superior Court*, *supra*, 118 Cal.App.5th at p. 81.)  Because substantial evidence does not support the trial court's finding that the presumption was overcome, it abused its discretion in denying defendant diversion based on that finding.  (*Ibid.*; *Moine, supra,* 62 Cal.App.5th at p. 449.)

### B.  Unreasonable Risk of Danger

The People contend that we should still affirm the trial court's order denying defendant diversion because "overwhelming evidence" established that defendant poses an unreasonable risk of danger to public safety despite the trial court's contrary finding. Defendant contends that the trial court's finding that defendant did not pose an unreasonable risk of danger is supported by substantial evidence and should be upheld.

We review the trial court's factual findings for substantial evidence.  (*Lacour, supra,* 110 Cal.App.5th at p. 401.)  " 'A substantial evidence inquiry examines the record in the light most favorable to the judgment and upholds it if the record contains reasonable, credible evidence of solid value upon which a reasonable trier of fact *could* have relied in reaching the conclusion in question.  Once such evidence is found, the substantial evidence test is satisfied. . . .' " (*People v. Armstrong* (2016) 1 Cal.5th 432, 450 (*Armstrong*).)

8

In reviewing the trial court's finding that defendant did not pose an unreasonable risk of danger to public safety, the specific question we consider is whether substantial evidence supports the trial court's finding that defendant was not likely to commit a super-strike offense if granted diversion. (*Gomez, supra,* 113 Cal.App.5th at p. 690; *Moine*, *supra*, 62 Cal.App.5th at p. 450 ["a trial court necessarily must find the defendant is 'likely to commit a super-strike offense' " to deny diversion on the basis that defendant posed an unreasonable risk of danger]; see § 1170.18, subd. (c) [defining unreasonable risk of danger to public safety as unreasonable risk defendant will commit a super-strike offense].)

We reject the People's argument that the record contains "overwhelming evidence" that defendant posed an unreasonable risk of danger to the public if he were granted diversion. The record before the trial court included all the information the People highlight in their brief about defendant's criminal history, including his admission to the section 288 violations. However, the record also included information about defendant's mental health history, his mental health diagnoses, the abuse he experienced as a child, that his admission to the section 288 violations occurred when he was still a minor, and the treatment plan to address defendant's mental health issues. The record contained no evidence that defendant committed a section 288 offense or super-strike offense as an adult.

Considering the entire record and given the high bar for finding that a defendant poses an unreasonable risk of danger, the trial court found defendant would not pose "an unreasonable risk to public safety as defined within the statute." Meaning that he was not likely to commit a super-strike offense if granted diversion. (*Gomez*, *supra*, 113 Cal.App.5th at p. 690; *Moine*, *supra*, 62 Cal.App.5th at p. 450.) " ' " 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) Because the record contains substantial evidence to support that finding, we do not disturb it.

9

The cases the People ask us to consider--*People v. Superior Court* (*Taylor*) (2026) 118 Cal.App.5th 1153, review denied, May 27, 2026 (*Taylor*), and *People v. Nelson* (Mar. 5, 2026, B342722), review denied and opinion ordered nonpublished June 10, 2026, S296167--do not compel a different result.

Since the People filed their notice of new authorities, our Supreme Court depublished *Nelson.* Except in limited circumstances not applicable here, it is improper to cite or rely on unpublished opinions. (*People v. Gray* (2014) 229 Cal.App.4th 285, 292, fn. 15, citing Cal. Rules of Court, rule 8.1115(a) & (b).) Therefore, we do not address *Nelson*.

Regarding *Taylor*, we caution that "[w]hen we decide issues of sufficiency of evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts." (*People v. Thomas* (1992) 2 Cal.4th 489, 516.) In *Taylor*, the court of appeal reversed the trial court's order granting diversion because "no expert *nor any other evidence* suggested that [defendant] would not pose an unreasonable risk of danger to public safety if granted diversion." (*Taylor*, 118 Cal.App.5th at p. 1167, italics added.) The evidence in the record indicated "if defendant left a facility and fail[ed] to take his medication, [both of which he had a history of doing,] he would be at risk of engaging in violent behavior." (*Ibid*.) The record also supported a reasonable inference that defendant would "abandon aspects of the mental health regimen experts testified were crucial for him not to pose an unreasonable danger to the public, with potentially catastrophic consequences." (*Id*. at p. 1168.) To the contrary, the record in *Taylor* contained no evidence to support the finding that the defendant in that case would not pose an unreasonable risk of danger to public safety if granted diversion. (*Id*. at p. 1167.)

Here, in contrast, the record supports the trial court's finding that defendant would not pose an unreasonable risk of danger to public safety. (*Armstrong*, *supra*, 1 Cal.5th at p. 450.) Defendant has not committed a super-strike offense as an adult. Moreover,

defendant's demeanor and his intellectual functioning support an inference that he did not plan the robberies and that he is so compromised intellectually that he cannot care for himself and follows along just to survive. Taken together, the trial court could have concluded that defendant would not pose "an unreasonable risk to public safety." Our substantial evidence inquiry ends there. (*Ibid*.)

Because we conclude substantial evidence supports the trial court's finding that defendant would not pose an unreasonable risk of danger to public safety, we affirm its finding. (*Armstrong*, *supra*, 1 Cal.5th at p. 450.) We note, however, that the court did not determine defendant's suitability for diversion using all four criteria listed in section 1001.36, subdivision (c) after it decided that he was ineligible for diversion. As we are remanding for a hearing on defendant's suitability, we direct the court to determine whether defendant is suitable based on the three remaining criteria in subdivision (c).

### DISPOSITION

We conditionally reverse the judgment and remand for a further hearing on defendant's suitability for diversion. If the court determines that defendant is suitable for diversion, it may grant defendant's application. If the court determines defendant is not suitable, defendant's convictions and sentence shall be reinstated.

/s/ _____

WISEMAN, J.*

We concur:

/s/ _____

KRAUSE, Acting P. J.

/s/ _____

BOULWARE EURIE, J.

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11