McKINSTER, J.
*695 The Mentally Disordered Offenders Act (Pen.Code, § 2960 et seq. )[1] provides for involuntary civil commitment as a condition of parole for prisoners who are found to have "a severe mental disorder" if certain conditions are met. (§ 2962, subds. (a)-(f).)[2] The commitment is for a *696 term of one year and may be extended annually for an additional year on petition of the district attorney. (§ 2972, subds. (a), (b).)
Appellant Eddie Dunley appeals from a judgment extending his commitment as a mentally disordered offender (MDO). He contends that because persons subject to civil commitment after being found not guilty by reason of insanity (NGI) have a statutory right, pursuant to section 1026.5, subdivision (b)(7) (hereafter section 1026.5(b)(7)), not to be compelled to testify in proceedings to extend their commitments (Hudec v. Superior Court (2015) 60 Cal.4th 815, 832, 181 Cal.Rptr.3d 748, 339 P.3d 998 ), so should a person facing commitment as an MDO. He points out that this right has been extended to commitment proceedings for sexually violent predators (SVP) by application of equal protection principles. (People v. Curlee (2015) 237 Cal.App.4th 709, 716-722, 188 Cal.Rptr.3d 421.) He contends that NGI's, SVP's and MDO's are all similarly situated with respect to civil commitment procedures.
We hold that MDO's, SVP's and NGI's are all similarly situated with respect to the testimonial privilege provided for in section 1026.5(b)(7). However, as we will discuss, this appeal is moot because a subsequent petition for recommitment was denied by the trial court on or about March 7, 2016, based on the court's finding that appellant no longer met the criteria for commitment as an MDO. Accordingly, although we will decide the threshold issue, which is purely a legal question and will surely reoccur in MDO proceedings in light of People v. Curlee, supra, 237 Cal.App.4th 709, 188 Cal.Rptr.3d 421, we will *634 dismiss the appeal as moot.[3] (People v. Cheek (2001) 25 Cal.4th 894, 897-898, 108 Cal.Rptr.2d 181, 24 P.3d 1204 ; People v. Gregerson (2011) 202 Cal.App.4th 306, 321, 135 Cal.Rptr.3d 188.)
PROCEDURAL HISTORY
On June 9, 2014, the San Bernardino County District Attorney filed a petition pursuant to section 2972 to extend appellant's involuntary commitment as an MDO.
On December 17, 2014, a jury found that appellant met the criteria for commitment as an MDO. Accordingly, the court granted the petition and extended appellant's commitment until January 20, 2016. Appellant filed a timely notice of appeal.
*697 FACTS
While serving a prison term for robbery, appellant had several incidents of battery on correctional officers. A mental health evaluation was done after each incident. Both evaluations reported that appellant was disorganized and confused. One evaluation concluded that appellant showed severely impaired judgment. The other concluded that he showed psychosis. In 2008, he was committed to Atascadero State Hospital as an MDO. He had previously been admitted to Atascadero in 2001.
Dr. Joe Debruin, a forensic psychologist at Atascadero, evaluated appellant to determine whether he met the criteria for recommitment as an MDO.[4] Dr. Debruin reviewed appellant's treatment plan, interdisciplinary and psychiatric progress notes, previous MDO evaluation reports, and the police report concerning his prior offense. He also interviewed appellant.
Dr. Debruin diagnosed appellant with schizoaffective disorder, bipolar type, which, he testified, is a severe mental disorder that persists over a period of time. He testified that appellant had consistently exhibited symptoms of schizoaffective disorder since he was committed to Atascadero in 2008. Appellant displayed a belief that he was God or "God's son in the flesh," and reported hallucinations and hearing voices, which sometimes commanded him to be aggressive. He had manic episodes during which he spoke in a rapid, disorganized and incoherent manner. He had mood control difficulties and would fluctuate from being very agitated to being depressed. He had paranoid episodes in which he thought people were "messing with his body organs" and that hospital staff were "telling lies and being corrupt." These symptoms continued to occur in the months preceding the hearing. During his current confinement at Atascadero, appellant had 60 violent episodes. The most recent was in December 2013, when appellant repeatedly punched a fellow patient.
Dr. Debruin testified that appellant lacked insight into his condition, i.e., that he did not believe he was mentally ill or that he needed medication. Appellant did not follow his treatment plan or participate in groups, and he was often unwilling to take his medication. Dr. Debruin opined that if appellant were released into the community, he would not take his medication *635 and that his symptoms would escalate as a result. *698 Based on appellant's prior offenses, violent behavior, delusional statements and lack of insight into his illness, Dr. Debruin opined that appellant's mental disorder was not in remission and, as a result of the disorder, he posed a substantial danger for violence if he were released into the community.
Dr. Martin Steed, appellant's treating psychiatrist for the year and a half preceding the hearing, testified to the same effect. He diagnosed appellant with schizoaffective disorder, bipolar type, which he characterized as a severe mental disorder. He testified that appellant displayed "extensive irritable mood, grandiosity, increase in self-esteem, in risky behaviors, as well as hyperreligiosity and hypersexuality." He noted that as recently as two weeks before coming to San Bernardino for the hearing, appellant "thought he was God, as he usually does." He testified that appellant's condition was not in remission and that he had no doubt that appellant would stop taking his medications as soon as he was released and that he would pose a danger to the public. Although he acknowledged that appellant's violent behavior had decreased since he had been placed on lithium, he was still symptomatic. Dr. Steed concluded that appellant posed a substantial danger to others as a result of his mental disorder.
The prosecution called appellant to testify. Much of his testimony was confused or nonresponsive, but he ultimately admitted that he had a mental disorder and that his disorder made him dangerous.
LEGAL ANALYSIS
1.
THE APPEAL IS MOOT
A case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief. (People v. Gregerson, supra, 202 Cal.App.4th at p. 321, 135 Cal.Rptr.3d 188.) By the nature of MDO proceedings, in which a new commitment order must be sought every year, issues arising in such proceedings can most often not be decided on appeal quickly enough to provide any relief to the person committed. That is the case here. Appellant's current commitment order expired on January 20, 2016, while this appeal was pending. A new petition for recommitment was filed on June 22, 2015, and was denied on March 7, 2016, based on the trial court's finding that appellant no longer meets the criteria for commitment as an MDO.[5] A reversal of appellant's current commitment order would have no effect on the pending *699 petition. However, it is appropriate to address the issues raised in this appeal because they are important legal issues that are likely to reoccur " 'while evading appellate review....' [Citation.]" (People v. Gregerson, at p. 321, 135 Cal.Rptr.3d 188.) Accordingly, we have chosen to address these issues, but we will dismiss the appeal as moot. (Ibid. )
2.
EQUAL PROTECTION
Background.
Under both the United States and California Constitutions, a person has *636 the right to refuse to answer potentially incriminating questions put to him or her in any proceeding; in addition, the defendant in a criminal proceeding enjoys the right to refuse to testify at all. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.) Commitment proceedings involving NGI's, SVP's and MDO's are all civil in nature. (Hudec v. Superior Court, supra, 60 Cal.4th at p. 819, 181 Cal.Rptr.3d 748, 339 P.3d 998 (Hudec ) [NGI]; People v. Leonard (2000) 78 Cal.App.4th 776, 789-793, 93 Cal.Rptr.2d 180 [SVP] ; People v. Montoya (2001) 86 Cal.App.4th 825, 830, 103 Cal.Rptr.2d 579 [MDO], overruled on another point in People v. Blackburn (2015) 61 Cal.4th 1113, 1131, 191 Cal.Rptr.3d 458, 354 P.3d 268 ; § 2972, subd. (a) [MDO commitment hearing is a civil hearing].) Accordingly, none of the three groups has a right emanating from the Fifth Amendment or article I, section 15 of the California Constitution to refuse to testify in commitment proceedings. (See Hudec, at p. 819 & fn. 2, 181 Cal.Rptr.3d 748, 339 P.3d 998.)[6]
In Hudec, supra, 60 Cal.4th 815, 181 Cal.Rptr.3d 748, 339 P.3d 998, the California Supreme Court resolved a split of authority as to whether NGI's have a statutory right not to be compelled to testify. The court held that section 1026.5(b)(7), which incorporates into an NGI commitment extension proceeding " 'the rights guaranteed under the federal and State Constitutions for criminal proceedings,' " provides that a defendant may not be compelled to testify in NGI commitment proceedings. (Hudec, at pp. 819-832, 181 Cal.Rptr.3d 748, 339 P.3d 998.)
In People v. Curlee, supra, 237 Cal.App.4th 709, 188 Cal.Rptr.3d 421 (Curlee ), the court concluded that SVP's and NGI's are similarly situated "for purposes of whether they may be compelled to testify at their commitment hearings." (Curlee, at pp. 720-721, 188 Cal.Rptr.3d 421.) Accordingly, it held, unless the People can justify *700 disparate treatment, equal protection principles mandate that the statutory right not to testify in a commitment proceeding provided for in section 1026.5(b)(7) applies to SVP's as well as to NGI's. It remanded the matter for an evidentiary hearing for the purpose of allowing the People to show that differential treatment of NGI's and SVP's is justified. (Curlee, at pp. 721-723, 188 Cal.Rptr.3d 421.) Relying in part on Curlee, appellant contends that MDO's are similarly situated with respect to NGI's and SVP's for the purpose of the testimonial privilege.[7]
The Claim is Not Forfeited.
We first address the Attorney General's contention that review of the issue is forfeited because at the hearing, appellant did not assert a right not to testify. We acknowledge that an equal protection claim may be forfeited if it is raised for the first time on appeal. (Curlee, supra, 237 Cal.App.4th at p. 714, 188 Cal.Rptr.3d 421.) However, we will exercise our discretion to address the issue because at the time of the hearing, in December 2014, published authority from this court held that section 1026.5(b)(7)
*637 does not confer a testimonial privilege on NGI's and, therefore, also rejected a contention that equal protection mandates extension of that right to MDO's. (People v. Lopez (2006) 137 Cal.App.4th 1099, 1106-1116, 40 Cal.Rptr.3d 789, disapproved in part in Hudec, supra, 60 Cal.4th at p. 832, fn. 5, 181 Cal.Rptr.3d 748, 339 P.3d 998.) Other appellate courts had held that NGI's do have a statutory right to refuse to testify and, in January 2015, one month after appellant's hearing, the California Supreme Court resolved the issue as described above. (Hudec, at pp. 822-825, 181 Cal.Rptr.3d 748, 339 P.3d 998.) However, in December 2014, it would not have been unreasonable to assume that an objection would have been futile, based on People v. Lopez. We do not require parties to make futile objections. (Curlee, at p. 715, 188 Cal.Rptr.3d 421.) Moreover, the threshold equal protection issue we decide in this appeal is a question of law and does not require resolution of disputed factual issues. Such an issue can be raised for the first time on appeal. (Cedars-Sinai Medical Center v. Superior Court (1998) 18 Cal.4th 1, 6, 74 Cal.Rptr.2d 248, 954 P.2d 511.)
MDO's, SVP's and NGI's are Similarly Situated for Purposes of the Testimonial Privilege Under Section 1026.5(b)(7) .
" ' "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." [Citations.] This initial inquiry is not whether persons are similarly situated for all *701 purposes, but "whether they are similarly situated for purposes of the law challenged." ' [Citation.] In other words, we ask at the threshold whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws." (People v. McKee (2010) 47 Cal.4th 1172, 1202, 104 Cal.Rptr.3d 427, 223 P.3d 566 (McKee ).)
In contexts other than the testimonial privilege, NGI's, SVP's and MDO's have been found similarly situated for purposes of the application of the three commitment schemes, thus requiring justification for any differential treatment. In McKee, supra, 47 Cal.4th 1172, 104 Cal.Rptr.3d 427, 223 P.3d 566, the court addressed the contention that the SVP scheme then in effect, which imposed indefinite commitments and required SVP's to bear the burden of proving at periodic review hearings that they should be released, violated equal protection because it placed a greater burden on SVP's than on MDO's. Under the MDO commitment scheme, the state bears the burden of proving beyond a reasonable doubt that the person should be recommitted for another year. (McKee, at pp. 1183-1184, 1202, 104 Cal.Rptr.3d 427, 223 P.3d 566.)
After noting the "incontrovertible point that SVP's and MDO's do not share identical characteristics," the McKee court held: "We conclude that MDO's and SVP's are similarly situated for our present purposes. As was stated in In re Calhoun (2004) 121 Cal.App.4th 1315, [18 Cal.Rptr.3d 315], in which the court struck down a policy that granted to SVP's a more restricted right to refuse antipsychotic medication than MDO's, both MDO's and SVP's 'have been found, beyond a reasonable doubt, to suffer from mental disorders that render them dangerous to others. The dangerous finding requires only an assessment of future dangerousness. It does not require proof of a recent overt act. Both have been convicted of a serious or violent felony. At the *638 end of their prison terms, both have been civilly committed to the Department of Mental Health[8 ] for treatment of their disorders. Furthermore, the purpose of the MDO Act and the SVPA is the same: to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders.' ( [Calhoun, ] at pp. 1351-1352, 18 Cal.Rptr.3d 315, accord People v. Buffington (1999) 74 Cal.App.4th 1149, 1156, [88 Cal.Rptr.2d 696] (Buffington ) [concluding that SVP's and MDO's are similarly situated because 'they are currently suffering from a mental disorder that renders them dangerous']; People v. Gibson (1988) 204 Cal.App.3d 1425, 1436, [252 Cal.Rptr. 56] [an MDO is similarly situated to other adult persons involuntarily committed because '[o]ne purpose of all of these pertinent involuntary commitment schemes is the protection of the public from the dangerous mentally ill and their involuntary commitment for treatment'].) We agree that these common *702 features make SVP's and MDO's similarly situated. Therefore, when the state makes the terms of commitment or recommitment substantially less favorable for one group than the other, the case law reviewed above teaches that it is required to give some justification for this differential treatment. " (McKee, supra, 47 Cal.4th at p. 1203, 104 Cal.Rptr.3d 427, 223 P.3d 566, italics added.)
The McKee court went on to hold that NGI's and SVP's are also similarly situated for purposes of the civil commitment schemes. The court stated: "McKee argues that NGI's and SVP's are also similarly situated and that a comparison of the two commitment regimes raises similar equal protection problems as discussed above. His argument has merit. NGI's as discussed are those who have committed criminal acts but have been civilly committed rather than criminally penalized because of their severe mental disorder. Under the current statutory scheme they may not be in civil custody longer than the maximum state prison term to which they could have been sentenced for the underlying offense [citations] unless at the end of that period the district attorney extends the commitment for two years by proving in a jury trial beyond a reasonable doubt that the person presents a substantial danger of physical harm to others because of a mental disease, defect, or disorder. [Citations.] We agree that, as with MDO's, the People have not yet carried their burden of justifying the differences between the SVP and NGI commitment statutes." (McKee, supra, 47 Cal.4th at p. 1207, 104 Cal.Rptr.3d 427, 223 P.3d 566.)
In Curlee, supra, 237 Cal.App.4th 709, 188 Cal.Rptr.3d 421, the court held that for purposes of the testimonial privilege in commitment proceedings, SVP's and NGI's are similarly situated. Citing, inter alia, McKee, supra, 47 Cal.4th 1172, 104 Cal.Rptr.3d 427, 223 P.3d 566, the court stated: "The preconditions to commitment are similar: Both groups have committed a criminal act and have been found to suffer from a mental condition that might present a danger to others. [Citation.] At the end of the SVP's prison term, and at the end of the term for which an NGI could have been imprisoned, each is committed to the state hospital for treatment if, at the end of that period, the district attorney proves in a jury trial beyond a reasonable doubt that the person presents a danger to others as a result of a mental disease, defect, or disorder. [Citations.] The purpose of the commitment is the same: To *639 protect the public from those who have committed criminal acts and have mental disorders and to provide mental health treatment for the disorders. [Citations.]" (Curlee, at p. 720, 188 Cal.Rptr.3d 421.)
In this case, the Attorney General contends that NGI's are not similarly situated with respect to MDO's or SVP's because an NGI defendant asserts his mental disorder as an affirmative defense in his criminal trial and is, therefore, found not culpable as a result of the disorder. She notes that a defendant bears the burden of proof on the NGI defense. (See § 25, subd. (b).) In contrast, in both MDO and SVP proceedings, a defendant has *703 been found guilty of a qualifying offense and after having served his or her sentence, is found to qualify for civil commitment in a proceeding in which the prosecution bears the burden of proof as to the existence of a mental disorder that renders that defendant a danger to the public. We fail to see how these distinctions are relevant to the determination as to whether the three groups are similarly situated for purposes of the testimonial privilege, however. Based on the reasoning of McKee, supra, 47 Cal.4th at page 1202, 104 Cal.Rptr.3d 427, 223 P.3d 566, and Curlee, supra, 237 Cal.App.4th at pages 720 through 721, 188 Cal.Rptr.3d 421, we can see no distinction between MDO's and either SVP's or NGI's for purposes of the testimonial privilege. Accordingly, we hold that for that purpose, MDO's, NGI's and SVP's are similarly situated.
Disparate Treatment.
If two groups are found to be similarly situated for the purposes of the law in question, the next inquiry is whether the state can justify the disparate treatment. (People v. Buffington, supra, 74 Cal.App.4th at p. 1155, 88 Cal.Rptr.2d 696.) The Attorney General contends that disparate treatment is justified under the rational basis test because the Legislature could rationally conclude that because an NGI has not been convicted of a felony but rather has been absolved of criminal liability, an NGI retains the rights of a person who has been accused of a crime. An MDO, on the other hand, has been convicted of a serious or violent offense. The argument is plausible under the rational basis test, which requires only that there is " ' "any reasonably conceivable state of facts that could provide a rational basis for the classification." ' [Citation.]" (People v. Turnage (2012) 55 Cal.4th 62, 74, 144 Cal.Rptr.3d 489, 281 P.3d 464.) However, that is not the standard we must apply. The California Supreme Court has long held that because involuntary civil commitment schemes involve the committed person's fundamental interest in liberty, equal protection challenges to such schemes under the California Constitution are reviewed under the strict scrutiny standard.[9] (Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 1153, fn. 20, 81 Cal.Rptr.2d 492, 969 P.2d 584 ; Conservatorship of Hofferber (1980) 28 Cal.3d 161, 171, fn. 8, 167 Cal.Rptr. 854, 616 P.2d 836 ; see also McKee, supra, 47 Cal.4th at p. 1203, 104 Cal.Rptr.3d 427, 223 P.3d 566 [involuntary commitment proceedings impact individual's fundamental liberty interest].)
Under the strict scrutiny test, a discriminatory law will not be given effect unless its classification bears a close relation to promoting a compelling state interest, the classification is necessary to achieve the state's goal, and the classification is narrowly drawn to achieve the goal by the least restrictive means. ( *640 *704 Board of Supervisors v. Local Agency Formation Com. (1992) 3 Cal.4th 903, 913, 13 Cal.Rptr.2d 245, 838 P.2d 1198.) Under that standard, we do not find the Attorney General's argument persuasive. The Attorney General does not identify a compelling state interest nor does it address any possible reason that distinguishing between NGI's and MDO's with respect to the testimonial privilege is necessary to achieve any such goal.
We note that in both McKee, supra, 47 Cal.4th 1172, 104 Cal.Rptr.3d 427, 223 P.3d 566 and Curlee, supra, 237 Cal.App.4th 709, 188 Cal.Rptr.3d 421, the courts remanded the matters for an evidentiary hearing to allow the state to establish a factual basis justifying the disparate treatment of the affected groups. (McKee, at pp. 1208-1211, 104 Cal.Rptr.3d 427, 223 P.3d 566 ; Curlee, at pp. 722-723, 188 Cal.Rptr.3d 421.) Here, however, the Attorney General does not suggest any factual finding that might justify the disparate treatment of NGI's and MDO's with respect to the testimonial privilege, and none is apparent to us. Accordingly, we see no justification to remand for such a hearing. We do not, however, hold that there cannot possibly be any such justification. Consequently, that issue may be litigated in future proceedings.
3.
REVIEW OF THE ASSERTED INSTRUCTIONAL ERROR IS FORFEITED[10]
Appellant appears to assert that the trial court erred by failing to instruct the jury on the burden of proof with respect to his medicated state, i.e., whether he is in remission because his symptoms are controlled by his current medication. That is, at least, what the heading of his argument states. He relies on People v. Noble (2002) 100 Cal.App.4th 184, 121 Cal.Rptr.2d 918 (Noble ). Upon further examination, however, appellant's actual contention is that the trial court erred by failing to give an instruction suggested in dictum by the court in Noble. (Id. at p. 190, 121 Cal.Rptr.2d 918.) The suggested instruction does not relate to the actual issue in Noble, which is that the court gave an instruction that impermissibly shifted the burden of proof. (Id. at pp. 188-190, 121 Cal.Rptr.2d 918.)
The issue in Noble is as follows. In that case, the trial court in an MDO proceeding first instructed the jury: " 'It is the burden of the prosecution to prove beyond a reasonable doubt that the defendant meets the requirements for a hospital extension as defined in these instructions.' It then instructed the jury to determine whether defendant, 'by reason of a mental disorder, not at this time in remission, represents a substantial danger of physical harm to others. [¶] The People have the burden of proving beyond a reasonable doubt that the respondent [defendant]: [¶] 1. Has a severe mental disorder; [¶] 2.
*705 Suffers from a severe mental disorder that is not in remission or cannot be kept in remission if the person's treatment is not continued; and [¶] 3. By reason of his severe mental disorder, the respondent [defendant] represents a substantial danger of physical harm to others.' Quoting the statutory definition of the term, the trial court also instructed the jury that ' "remission" means a finding that the overt signs and symptoms of the severe mental disorder are controlled either by psychotropic medication or psychosocial support....' " (Noble, at p. 189, 121 Cal.Rptr.2d 918.)
The jury was further instructed in terms of CALJIC No. 4.15 as follows: " 'It is a *641 defense to a Petition to Extend Commitment that the respondent [defendant] in a medicated state does not represent a substantial danger of physical harm to others. [¶] The ... [defendant] has the burden of proving by a preponderance of the evidence all of the facts necessary to establish: [¶] 1. In his present medicated condition he no longer represents a substantial danger of inflicting physical harm upon others; and [¶] 2. He will continue to take the medication as prescribed, in an unsupervised environment. [¶] If you find that the respondent [defendant] has met this burden on these issues, you should find that he does not represent a substantial danger of physical harm to others.' " (Noble, supra, 100 Cal.App.4th at p. 189, 121 Cal.Rptr.2d 918.)
The appellate court held that giving CALJIC No. 4.15 was erroneous because the so-called "medication defense," i.e., the defense that the person is in remission because his medication controls his mental disorder and renders him not dangerous is not an affirmative defense. Rather, it is a defense that negates an element of the state's case, in that the state has the burden of proving that the person is not in remission. An affirmative defense is one which does not negate an essential element of a cause of action or charged crime, but instead presents new matter to excuse or justify conduct that would otherwise lead to liability. (Noble, supra, 100 Cal.App.4th at p. 189, 121 Cal.Rptr.2d 918.) "Where a 'defense' negates an essential element of the crime charged rather than introducing new matter ... 'the state may not constitutionally place the burden of persuasion on that issue upon the defendant.' [Citation]." (Ibid. ) Accordingly, the court held, the trial court erred in giving CALJIC No. 4.15. (Noble, at pp. 189-190, 121 Cal.Rptr.2d 918.)
The court then stated in dictum that when a defendant relies on the medication defense, the court should instruct the jury as follows: "The People have the burden to prove, beyond a reasonable doubt, that if released, the defendant will not take his or her prescribed medication and in an unmedicated state, the defendant represents a substantial danger of physical harm to others." (Noble, supra, 100 Cal.App.4th at p. 190, 121 Cal.Rptr.2d 918.)
Here, the trial court did not give an instruction shifting the burden of proof to appellant on the medication defense. Instead, it instructed on the *706 state's burden using CALCRIM No. 3457. That instruction explains that the state must prove that the person has a severe mental disorder that is not in remission or that cannot be kept in remission without continued treatment and, as a result, the person poses a substantial danger of physical harm to others. It defines "remission" as meaning that "the external signs and symptoms of the severe mental disorder are controlled by either psychotropic medication or psychosocial support." (CALCRIM No. 3457.)
Appellant relied on the medication defense in the hearing and presented evidence that he had not engaged in any violence since he began taking lithium. He requested a special instruction in the language suggested in Noble, supra, 100 Cal.App.4th at page 190, 121 Cal.Rptr.2d 918. The court denied the request, saying that the requested instruction was adequately covered by CALCRIM No. 3457.
Appellant now contends that this was error, because the jury might have been confused by CALCRIM No. 3457. He contends that the instruction may be confusing or misleading, "[d]epending on the jury's understanding of the word 'treatment.' "[11] If the jury understood *642 "treatment" to mean "medication," he contends, the instruction's definition of remission "would have made no sense, and the jury would have been confused." Appellant did not, however, make that argument in the trial court. Rather, his attorney merely stated that he was requesting the Noble instruction because an appellate attorney had taken him to task in a prior case for failing to request the instruction. Even after the jury submitted a question asking for clarification about remission, defense counsel merely suggested that the Noble instruction "might be appropriate in light of the question."[12] He did not make the assertion appellant now makes, i.e., that CALCRIM No. 3457 is confusing because it does not define "treatment." The Noble instruction in no way clarifies the meaning of "treatment," however. Rather, it addresses the People's burden "to prove, beyond a reasonable doubt, that if released, the defendant will not take his or her prescribed medication and in an unmedicated state, the defendant represents a substantial danger of physical harm to others." (Noble, supra, 100 Cal.App.4th at p. 190, 121 Cal.Rptr.2d 918.) Failure to request clarifying language where an instruction is otherwise correct forfeits review. (People v. Maury (2003) 30 Cal.4th 342, 425-426, 133 Cal.Rptr.2d 561, 68 P.3d 1, disapproved on other grounds in Barnett v. Superior Court (2010) 50 Cal.4th 890, 901, 114 Cal.Rptr.3d 576, 237 P.3d 980.) Accordingly, appellant's claim was not preserved for review. *707 DISPOSITION
The appeal is dismissed.
We concur:
RAMIREZ, P.J.
HOLLENHORST, J.

All further statutory citations refer to the Penal Code unless another code is cited.

The conditions include the following: That the prisoner has a severe mental disorder, that the disorder is not in remission or cannot be kept in remission without treatment, that the severe mental disorder was one of the causes or was an aggravating factor in the prisoner's criminal behavior, that the prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to his or her parole release day, and that by reason of his or her severe mental disorder, the prisoner represents a substantial danger of physical harm to others. (§ 2962, subd. (d)(1).) The MDO Act applies only to prisoners who have been convicted of specified offenses. (§ 2962, subd. (e).)

We will also address appellant's claim of instructional error because it appears to involve the impermissible shifting of the burden of proof to appellant.

"If the court or jury finds that the patient has a severe mental disorder, that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others, the court shall order the patient recommitted...." (§ 2972, subd. (c).)

We take judicial notice of the petition in People v. Dunley, filed June 22, 2015, in the Superior Court of San Bernardino County, case No. FELJS1502150. (Evid.Code, § 452, subd. (d).) By separate order, we have also taken judicial notice of the trial court's minutes dated March 7, 2016, denying the petition.

As in Hudec, supra, 60 Cal.4th 815, 181 Cal.Rptr.3d 748, 339 P.3d 998, appellant does not contend that he has such a right. He relies entirely on section 1026.5(b)(7) and equal protection principles.

Curlee, supra, 237 Cal.App.4th 709, 188 Cal.Rptr.3d 421, was decided in May 2015, very shortly after appellant filed his opening brief in this case. The Attorney General, whose brief was filed six months later, in November 2015, does not address Curlee. Appellant discussed Curlee in his reply brief. The Attorney General has not sought to provide supplemental briefing concerning the effect of Curlee on this case.

Now the State Department of State Hospitals. (Curlee, supra, 237 Cal.App.4th at p. 712, fn. 2, 188 Cal.Rptr.3d 421.)

Appellant relies on both the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 15 of the California Constitution.

See footnote 3, ante.

Appellant's argument initially appears to be that CALCRIM No. 3457 was confusing, depending on how the jury understood the word "treatment." However, as we discuss, this is not actually the gist of his argument.

"1. Is substantial danger of physical harm to others; are we to consider the fact if he is medicated or not? [¶] 2. Also, will Mr. Dunley be given a social worker when released?"